**WEST v. GIESEN et al.   (No. 6246.)**

(Court of Civil Appeals of Texas.  Austin.
Jan. 25, 1922.  Rehearing Denied
June 8, 1922.)

1. Frauds, statute of ⊚⇒60(2), 110(1)—Easement so connected with real estate under statute that it can be conveyed only by written instrument; deed giving grantee easement for irrigation insufficient under statute.

Though an easement is an intangible right, it is so connected with real estate that, under the statute, it cannot be conveyed otherwise than by a written instrument, and an instrument creating the easement must so describe it and the real estate burdened with it that the same can be identified by the description given or by reference to some other instrument referred to in the deed; so that a deed giving the grantee a right to receive from the grantor water to irrigate the lands conveyed, without indicating that there was an existing irrigation system through which the water could be delivered, is insufficient to create an easement.

2. Easements ⊚⇒1—Right belonging to land imposing burden on land of another is an "easement."

An "easement" is a right which belongs to and goes with a certain piece of real estate, known as the dominant estate, belonging to one person, and thereby imposes a burden upon another piece of real estate, known as the servient estate, belonging to another person, which is an incorporeal right, but is regarded as real estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Easement.]

3. Easements ⊚⇒16—Conveyance of portion of tract creates easement for use of necessary improvement over the real estate.

Where an owner of land has placed an improvement thereon, such as a road, and thereafter conveys a portion of the tract, the conveyance creates by implication an easement for the use of that improvement, if the improvement is open, usable, and permanent in its character, and of such a nature as does not require the act of man to perfect or indicate its use.

4. Easements ⊚⇒16—Not implied if it requires performance of service by a person.

The doctrine of implied easement does not apply if, in order for the grantee to obtain the benefit of the alleged easement, the grantor, or some one acting for him, shall have to perform a service.

5. Waters and water courses ⊚⇒154(2)—Conveyance of irrigated land does not imply easement for use of irrigating plant involving labor and expense to operate.

A conveyance of a tract of land which had previously been irrigated in connection with other land not conveyed, from an irrigating system which required the pumping of water to an elevated tank, involving labor and expense, does not convey to the grantor an implied easement to receive water for irrigation from that plant, which would require the grantor to expend labor and expense in the maintenance and operation of the irrigating system.

6. Waters and water courses ⊚⇒154(2)—Clause in deed relating to furnishing water for land conveyed held personal contract.

Where an owner of a tract of land irrigated by a pumping system conveyed a portion thereof, a clause in the deed obligating the grantors to furnish the water necessary to irrigate the land conveyed at a stipulated price per acre annually, payments to be made at the time thereafter to be agreed upon, was a personal contract for the supply of the water, and did not create an easement against the land on which the irrigating system was constructed.

7. Evidence ⊚⇒18—It is common knowledge that San Marcos river valley lands are valuable for agriculture without irrigation.

It is a matter of common knowledge that river valley lands along the San Marcos river are good agricultural lands and sell for good prices, regardless of the question of irrigation, and that during some years the rainfall is such as to render irrigation almost, if not entirely, unnecessary.

8. Easements ⊚⇒53—Owner of servient estate is not bound to expend money to maintain right.

The owner of land which is subject to an easement requiring the maintenance of means for its enjoyment is not bound, unless by virtue of some agreement, to keep such means in repair or to be at any expense to maintain them in a proper condition.

9. Waters and water courses ⊚⇒156(1)—Easement not created by habendum clause conveying appurtenances.

Even if the habendum clause in a deed can enlarge the grant, a habendum clause including the appurtenances to the land conveyed does not create an easement for receiving water from an irrigating system on the other portion of the tract where there was nothing else in the contract to confer such a right.

On Motion for Rehearing.

10. Appeal and error ⊚⇒797(2)—Failure to move to dismiss within 30 days waives objection to appeal bond.

The right to dismissal of the appeal because of failure to designate a party as obligee in the appeal bond is waived under Rules for the Courts of Civil Appeals, rule 8 (142 S. W. xi), where the motion to dismiss on that ground was not presented within 30 days after the filing of the transcript.

11. Appeal and error ⊚⇒390—Bond may be amended to add necessary obligee.

An appeal bond is sufficient to give jurisdiction to the Court of Civil Appeals notwithstanding it failed to designate a party to the appeal as obligee therein, and the court can permit the amendment of the bond to cure that defect under Rev. St. arts. 1609, 2104.

---

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**12. Appeal and error ⬅390—Appeal bond may be amended after expiration of time to perfect appeal.**

The right to amend an appeal bond given by Rev. St. arts. 1609, 2104, may be exercised after the time has expired for perfecting an appeal or writ of error by filing the transcript.

**13. Appeal and error ⬅931(4)—Finding cannot be presumed to support judgment if not sustained by evidence and contrary to statement of judgment.**

A finding in favor of a contract claimed by plaintiffs cannot be presumed to support the judgment in part, even if the pleadings properly alleged the contract, where there was no evidence to establish the contract, and the judgment showed it was based on a finding of an easement, and not on the contract.

Appeal from District Court, Hays County; M. C. Jeffrey, Judge.

Action by Ed. W. Giesen against J. M. West and others to establish an easement in an irrigating plant. Judgment for the plaintiff against the named defendant, and that defendant appeals. Reversed, and judgment rendered for the appealing defendant.

Will G. Barber and E. M. Cape, both of San Marcos, for appellant.

R. E. McKie, of San Marcos, for appellee Giesen.

Hertzberg, Kercheville & Thomson, of San Antonio, for appellee Woodward.

KEY, C. J. It is conceded that the nature and result of this suit are correctly stated in appellant's brief, as follows:

"Ed. W. Giesen prosecuted this suit in the district court of Hays county, Tex., against J. M. West, R. L. Eidson, and D. J. Woodward, alleging that on February 3, 1911, R. L. Eidson and J. C. Wood were the owners of certain real property situated in Hays county, Tex., a part of the J. M. Veramendi league No. 2, and being a tract of 250 acres of land which fronted on the east bank of the San Marcos river about one mile east of the city of San Marcos. That said Wood and Eidson also owned and used, in connection with that tract of land, a dam across the San Marcos river, near the upper end of that tract, by the use of which dam and its appurtenances water power was generated, by appropriate machinery, for the purpose of irrigating the entire tract of 250 acres of land, and that the said Wood and Eidson and their predecessors in title had a system of pipes, ditches, and conduits extending over and across all of the 250-acre tract of land, by the use of which dam, appurtenances, ditches, pipes, and conduits water was supplied for irrigation purposes to the 250-acre tract of land.

That, on the date mentioned Eidson and Wood conveyed 30 acres off of the most south-end of said irrigated farm to J. F. Blackmon, and that the deed from Eidson and Wood to Blackmon was a deed of general warranty, containing all of the usual and customary covenants of warranty, and that said deed contained the following stipulation as to water rights: 'It is further agreed, as a portion of the consideration for this sale, that said Wood and Eidson will furnish to said J. F. Blackmon water to irrigate said 30 acres of land, at and for the price of seven and 50/100 ($7.50) dollars per acre per annum; the said water to be furnished whenever desired by the said J. F. Blackmon, but it is understood that the said J. F. Blackmon shall pay for the said water delivered at his boundary lines, the sum of seven and 50/100 ($7.50) dollars per acre per annum, payable at such times as may be agreed upon by the parties.'

"The plaintiff alleged that, by the stipulation above quoted, it was intended to, and in fact did, grant to said 30 acres of land a perpetual right to receive from the other portion of said land then owned by said Wood and Eidson and from the dam, pumping plant, pipes, ditches, and conduits existing on said land retained by Wood and Eidson all water necessary or desired for irrigating all and every part of said 30-acre tract of land conveyed to Blackmon, and that the right so granted was and constituted an easement in favor of said 30-acre tract of land conveyed to Blackmon and an obligation upon the land then owned by Wood and Eidson, upon which was situated the dam and other appurtenances mentioned, and that such easement so granted ran with the land and was assignable and inheritable, and the right granted thereby was necessary to the beneficial enjoyment of the land.

"That, after the execution and delivery of the deed to Blackmon as aforesaid, Wood and Eidson conveyed the remaining 320-acre tract of land, upon which was situated the pumping plant and other appurtenances, to J. C. Hybarger, and that the deed to Hybarger was a deed of general warranty and contained this provision: 'It is expressly agreed that the grantee herein takes the property conveyed hereby subject to the stipulations in that deed to Blackmon, and grantee assumes all the obligations created thereby as to furnishing water rights and agrees to protect us fully therefrom.'

"Thereafter, on December 30, 1911, said Hybarger conveyed said property to D. J. Woodward, and the deed to Woodward contained the same provision as the deed to Hybarger, above mentioned.

"That thereafter, by a deed dated September 17, 1914, said Woodward conveyed to the defendant J. M. West the tract of land upon which there was situated the dam, pumping plant, and other appurtenances used for furnishing water to the 30-acre Blackmon tract, said conveyance being made by a deed of general warranty.

"That the deeds above mentioned were duly recorded, as provided by law, prior to the execution and delivery of the deed from Woodward to West last mentioned.

"That, after said Eidson had parted with all title to the remaining 220 acres of land formerly owned by himself and Wood, he acquired title to the 30-acre tract of land from Blackmon, by a deed dated March 19, 1913, the deed

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

to said Eidson covering said 30 acres of land being a deed of general warranty, expressly conveying to said Eidson all the water rights and other rights and interests described in the deed from Wood and Eidson to Blackmon.

"That thereafter said Eidson conveyed to the plaintiff, Ed. W. Giesen, 15 acres of said 30-acre tract of land, such conveyance being made by a deed of general warranty and containing the following provision: 'It is expressly understood that all the water rights and every other right and interest described in said deed (that is, the deed to Eidson to the 30-acre tract of land) and also in the deed from J. C. Wood and R. L. Eidson and wife to J. F. Blackmon, dated February 3, 1911, and recorded in Hays County Deed Records in Volume 60, at pages 443 and 444 thereof are hereby conveyed by said grantors to said Ed. W. Giesen.'

"The plaintiff alleged that, by virtue of the provisions in the several deeds above mentioned, there was created a covenant running with the land, requiring the owner of the original Eidson and Wood tract to furnish to the 30-acre tract, and to that portion thereof owned by the plaintiff, water for irrigating purposes, and this without reference to whether the owner of the servient estate had in any manner assumed the obligation to furnish such water.

"It was alleged that the defendant J. M. West furnished water to plaintiff from the month of September, 1914, to and including all of the year 1916, and that during the year 1917 the defendant J. M. West undertook to furnish plaintiff water for irrigation purposes, but failed to furnish said plaintiff water whenever desired by plaintiff, and for the price of $7.50 per acre per annum.

"It is alleged that during the year 1917 plaintiff, Giesen, caused that portion of the 30-acre Blackmon tract of land to be planted in vegetables and other truck, and that the failure of the defendant West to furnish sufficient water for irrigation purposes during the year 1917 occasioned plaintiff damage in the sum of $2,500. Plaintiff charged that he was entitled to receive water during the year 1917 by virtue of the provisions in the deed from Wood and Eidson to Blackmon conveying the 30-acre tract of land, and by virtue of the fact that for a long period of years said 30 acres had been furnished with water, and that the right to receive such water on said 30 acres was a permanent easement in favor of that tract of land and against the 220-acre tract, acquired by limitation and user. He further relies upon the undertaking of West, during the year 1917, to furnish water for that year as a basis for his recovery for 1917.

"The plaintiff also sought damages for failure on the part of the defendant West to furnish water for irrigation purposes for the years 1918 and 1919, and relies, for his right to receive water for those years, upon the provision contained in the deed from Wood and Eidson to Blackmon and upon his alleged permanent easement acquired by virtue of water having been furnished to said 30 acres for a long period of time by the owner of the 220-acre tract of land.

"Damages were sought in the sum of $2,500 for each of the years 1918 and 1919.

"Plaintiff charged, as against his vendor, the defendant R. L. Eidson, that said Eidson was liable to him, the plaintiff, for damages sustained in case it be held that the covenant was not a covenant running with the land, and that the defendant West was not liable thereon, and charged as his measure of damages the difference in market price between the value of said 15 acres with the water right and the value thereof without the water right.

"Plaintiff sought to recover against the defendant J. M. West for damages sustained by him during the years 1918 and 1919 by reason of said J. M. West having purchased the servient estate with constructive notice of the terms of the deed to Blackmon from Wood and Eidson.

"The plaintiff's prayer was for judgment against said J. M. West for damages sustained by reason of the failure on the part of said West to furnish water for irrigation purposes to plaintiff for the years 1917, 1918, and 1919, and for judgment establishing a permanent and perpetual right and easement in favor of plaintiff's property to receive water from the property owned by West; that such easement and right be established under the terms and stipulations contained in the deed from Wood and Eidson to Blackmon.

"The defendant J. M. West answered the plaintiff's petition by general and special demurrers and exceptions to various portions thereof, with a general denial, and specially pleaded that the dam, ditches, flumes, canals, water wheels, and pump used for furnishing water for irrigation purposes to the servient estate and to the dominant estate were easily destructible, and ordinary wear and tear thereon, occasioned from a proper usage thereof for irrigation purposes, would and did destroy and wear out said ditches, pump, canals, water wheel, machinery, and appliances connected therewith, and that they constantly depreciated and required constant repair and replacement, and that it was impossible to furnish water for irrigation purposes to plaintiff without making such repairs and replacements of worn-out and defective parts, and that to furnish such water would occasion frequent and recurring expenditure of large sums of money on the part of defendant West. Said defendant West further charged that, if there was any contract or covenant on the part of Eidson and Wood, or either of them, to furnish water to the plaintiff, Giesen, as claimed by said plaintiff, such covenant or undertaking was necessarily and essentially affirmative and personal in its nature, and did not and could not create a covenant or obligation running with the land then owned by West, and did not impose upon said West the duty to perpetually hereafter keep, maintain, and operate all such appliances and through the medium thereof pump and place water at the boundary line of plaintiff for irrigation purposes.

"That, after the acquisition by Eidson of the 30-acre tract of land from Blackmon, and before the purchase of any portion thereof by plaintiff, said Eidson conveyed about 10 acres of said 30 acres to Roy M. Perry, by a deed of general warranty, and further that, prior to the conveyance to said Giesen of said 15-acre tract, said Eidson conveyed about 5 acres thereof to one H. O. Launch, by a deed of general warranty, and purported to convey to each of said grantees, by those deeds, the rig

alleged to have been acquired by Eidson through the deed from Blackmon to him of the 30-acre tract of land. That, so far as the original stipulation contained in the deed from Wood and Eidson to Blackmon, as pleaded by plaintiff, may have created any obligation for furnishing water to irrigate said 30-acre tract of land, such obligation was an entire obligation and could have been complied with by placing such water at any appropriate boundary line of that entire 30-acre tract, if it be held that there was any duty or obligation created by said deed and now binding on defendant West to furnish water for any purpose to that 30-acre tract of land.

"That said Perry is claiming and asserting the right to have defendant West deliver water to a boundary line of his 10-acre tract, and the plaintiff, Giesen, asserts a similar right as to his 15-acre tract; that to deliver water to each of these tracts separately would materially increase the burden and expense resting upon the defendant West and would require the maintenance of two separate and independent lines of pipe, ditches, and canals to each of those tracts. That by reason of said increased burden no right existed in favor of the plaintiff Giesen to have water furnished him.

"Defendant West further pleaded that, by the deed from Wood and Eidson to Blackmon, there was conveyed one entire tract of land containing 30 acres, and that, in so far as that deed and the provisions thereof created any water rights in favor of said Blackmon of said 30 acres of land, Blackmon was to pay as a consideration for the furnishing of said water, at the rate of $7.50 per acre per annum for said entire 30 acres of land, but that the plaintiff alleged that he owns 15 acres of said 30-acre tract and is entitled to have such water furnished to him in consideration of the payment by him at the rate of $7.50 per acre per annum for only 15 acres of land, and that the other persons owning the remaining 15 acres of said 30-acre tract have not paid, nor offered, nor been willing to pay to the defendant West any part of the total consideration of $225 per annum for furnishing water to said 30 acres of land, and that, if plaintiff is awarded relief, as prayed for by him, then the defendant West and his land, would thereafter be charged with the duty to furnish water in consideration of only $112.50 per annum, instead of $225 per annum, as provided in the original deed, and that, to permit plaintiff, upon the tender of $112.50 per annum, to receive water for said 15 acres of land, would be a material change in the contract as between said Eidson and Wood and said Blackmon and a material change to the detriment of the defendant West and the land owned by him.

"Defendant West specially pleaded that, if a covenant running with the land in favor of said 30 acres of land to receive water was created by the Wood and Eidson deed, then, by the conveyance by Eidson of the 10-acre tract of land and such water right to Roy M. Perry, by a deed dated August 3, 1914, anterior to the conveyance to the plaintiff, Giesen, said Eidson conveyed all of said water right to said Perry. That the deed from said Eidson and wife to said Perry of 10 acres of said 30-acre tract contained this provision: 'There is also conveyed hereby, as appurtenant to said land, the water right going with said land, under which said Roy M. Perry, his heirs and assigns, shall be furnished water for irrigation of said 10-acre tract at and for the price of seven and $50/100 ($7.50) dollars per acre per annum, which water to be furnished whenever desired by said Perry and his assigns, same to be delivered at his boundary lines; this being the same right granted in favor of said 30 acres of land, of which the land here conveyed is a part, by a deed from Wood and Eidson to J. F. Blackmon, dated February 3, 1911, and here referred to and made part hereof.'

"That said deed also contained the usual habendum clause and the usual general warranty clause.

"That, by reason of the execution and delivery of said deed as aforesaid, said Perry acquired all of said water rights, if any then existed in favor of said Eidson, and that said Eidson and wife could not thereafter convey any of such water rights, as it is alleged they did, to the plaintiff Giesen.

"Defendant West further pleaded the statute of frauds against any alleged contract to furnish water for irrigation purposes to said 30-acre tract of land, or any part thereof, and specially pleaded that the plaintiff, Giesen, had not acquired in the state of Texas the right to use any water for irrigation purposes, and that said 30 acres of land was not entitled, under the laws of the state of Texas, to have water for irrigation purposes furnished it from the San Marcos river.

"Defendant West further pleaded an estoppel as against the plaintiff and his grantor by reason of the conveyance by said grantor, Eidson, by a deed of general warranty of the tract of land now owned by plaintiff, as well as the tract owned by the defendant West.

"Defendant West further pleaded a breach of the contract on the part of the plaintiff, Giesen, if any contract there was to furnish water, by reason of the failure and refusal of said Giesen to make payment therefor.

"Defendant West further pleaded his inability to furnish water for irrigation purposes by reason of the insufficiency of water for that purpose in the San Marcos river during the year 1917.

"The defendant J. M. West further sought affirmative relief in his said pleading as against his codefendant D. J. Woodward, and alleged a purchase from said Woodward by the defendant West of what is alleged to be the servient estate, and charged that the conveyances of said property to the defendant West by said Woodward were by deeds of general warranty, containing all of the usual and customary statutory covenants of warranty and the habendum clause and using the words 'grant and convey,' and alleged that, by reason of the execution and delivery of said deeds, the defendant Woodward covenanted to and with the defendant West that the estate and property covered by such deeds was free from all incumbrances and charges, and that said Woodward owned the full fee-simple title thereto, and alleged that, by virtue of the execution and delivery of said deeds and by virtue of articles 1112 and 1113 of the Revised Statutes of the state of Texas, his codefendant Woodward covenanted and contracted to and with the defendant West that said property was free and clear of all liens,

charges, and incumbrances, and that said Woodward owned the full fee-simple title thereto, and warranted such title to the defendant West. That said deed contained the following provision: 'To have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, unto the said J. M. West, his heirs and assigns, forever; and I do hereby bind myself, my heirs, executors, and administrators, to warrant and forever defend, all and singular, the said premises unto the said J. M. West, his heirs and assigns, against every person whomsoever, lawfully claiming, or to claim the same, or any part thereof, with the exception, however, of there being no warranty as to the acreage conveyed hereby.'

"Defendant West charges that there was conveyed to him what is known as the servient estate by two deeds, which deeds conveyed a tract of land, known as tract No. 1, containing 154.2 acres of land, and a tract of land, known as tract No. 2, containing 34 acres of land. That, at the time of the execution and delivery of said deeds, said tracts of land were worth, in their reasonable market and intrinsic value, the respective sums paid therefor by the defendant West, that is, tract No. 1 was worth $300 per acre, and tract No. 2 was worth $176.-50 per acre, and that such sums were so paid for such property by the defendant West to his codefendant Woodward. Defendant West charged that, if upon hearing it was found that there was a covenant perpetually running with the land and charging the property purchased by West from Woodward with the duty to furnish water to the 30-acre tract of land, or any part thereof, then there was a breach of the warranty and covenants contained in the deeds from Woodward to West, and that the tract known as tract No. 1, instead of being of the value of $300 per acre, the price paid therefor by West, was, in its market and intrinsic value, worth not in excess of $250 per acre, and that the defendant West was therefore damaged in the sum of $50 per acre as to tract No. 1. That the tract of 34 acres of land, instead of being of the value of $176.50 per acre, the price paid therefor by the defendant West, would not be worth over the sum of $125 per acre, and that the defendant West would be damaged thereby to the extent of $50 per acre. That the aggregate damage suffered by the defendant West, in case said covenant was held to be a covenant running with the land, would amount to the sum of $9,410.

"The defendant West prayed judgment against his codefendant Woodward in case the plaintiff should recover judgment against the defendant West, by reason of the covenant contained in the deed to Blackmon being held a covenant running with the land and a charge upon the property purchased by West, and asked damages in the sum of $9,410, and prayed for general and special relief.

"The plaintiff, by his first supplemental petition, demurred generally to the defendant West's said answer, filed a general denial thereof, and, in effect, reiterated the allegations of his said amended original petition, and prayed as in his said amended pleading.

"The defendant West by his first supplemental answer to the first supplemental petition of plaintiff demurred generally to same and excepted to same by special exceptions, and denied generally the allegations thereof.

"The defendant D. J. Woodward, answering the plaintiff's said amended petition, demurred and excepted to same generally and specially, denied all of the allegations thereof, and pleaded that he had sold the property alleged to be the servient estate to the defendant J. M. West.

"The defendant Woodward, answering the cross-action of his codefendant West, demurred generally and specially to same, denied all of the allegations thereof, and pleaded that, at the time of the purchase of said property by West, said West had actual and constructive notice and knowledge of any obligation existing upon the land owned by Woodward to furnish water to the property owned by the plaintiff.

"The defendant West replied to the defendant Woodward's pleading by a general demurrer and general denial.

"The defendant Eidson appeared and answered the plaintiff's said petition and impleaded his codefendants, Hybarger, Woodward, and West; but no statement is made of the pleading of the defendant R. L. Eidson or of the pleading of the defendant J. C. Hybarger or of the pleadings of any of the other parties to this suit relating thereto, inasmuch as no appeal has been taken from the judgment rendered with reference to the defendants Hybarger and Eidson.

"The general demurrer of tne defendant D. J. Woodward to the answer and cross-action of his codefendant West was sustained by the court, to which action of the court defendant West duly excepted.

"Thereupon, upon the pleadings mentioned, a trial was had in the district court of Hays county, Tex., before Hon. M. C. Jeffrey, judge of said court, and a jury, which trial began on the 13th day of October, A. D. 1919, and ended on the 16th day of October, 1919. The verdict of the jury was on special issues and was favorable to the plaintiff, Ed. W. Giesen.

"Plaintiff, Giesen, filed a motion for judgment on the verdict of the jury, which motion was granted.

"Defendant West filed a motion for judgment, which was overruled.

"At the proper time and in the proper manner the defendant J. M. West filed his motions for instructed verdict, covering the several phases of this case, which motions were overruled.

"Judgment was entered in favor of the plaintiff, Ed. W. Giesen, establishing in favor of said Giesen and the land owned by him and as against the defendant West and the land owned by him, and as appurtenant to and running with the land, a permanent right to receive water for irrigation purposes in favor of said 15-acre tract of land, and each and every part thereof, including that portion thereof owned by plaintiff, and further judgment was entered in favor of said Giesen and against said West for damages in the sum of $1,008.

"Thereafter the defendant J. M. West filed his motion for a new trial and to reform judgment on October 18, 1919; and thereafter, on the 18th day of October, 1919, said motion was heard by the court, and was in all things overruled and denied, to which action of the court the defendant J. M. West then and there excepted and gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial

District of Texas, at Austin, Tex.

"Thereafter, on October 28, 1919, the defendant J. M. West filed his appeal and supersedeas bond, and afterward, within the time granted by law and the order of court, filed his statement of facts and bills of exception; and he now brings this case to this honorable court for review."

The deed from J. C. Wood and R. L. Eidson and wife to J. F. Blackmon reads as follows:

"State of Texas, County of Hays.

"Know all men by these presents that we, J. C. Wood, of Bee county, Tex., and R. L. Eidson and wife, Willie E. Eidson, of Hays county, Tex., for and in consideration of the sum of twelve thousand dollars ($12,000.00) to us paid and secured to be paid by J. F. Blackmon as follows: Six thousand two hundred and fifty-nine dollars ($6,259.00) of said consideration is paid to us in cash or its equivalent, and the receipt of that amount is hereby acknowledged. The remainder of said consideration is evidenced by six promissory notes of the said J. F. Blackmon of even date herewith, the first of said notes being for the sum of seven hundred and forty-one dollars ($741.00) due one year after date, and the remaining five notes being each for the sum of one thousand dollars and due two, three, four, five, and six years after date respectively. All of said notes bear interest at the rate of 7 per cent. per annum, from date until paid, except the two one thousand dollar ($1,000.00) notes first due which bear interest at the rate of 8% per annum from date until paid. Said notes are signed by J. F. Blackmon and are payable to J. C. Wood and R. L. Eidson at San Marcos, Texas, interest payable annually as it accrues and providing for the usual 10 per cent. attorney's fees, if notes are not paid when due and are placed in the hands of an attorney for collection or collected by suit or through the probate court, said notes being secured by a vendor's lien reserved upon the property herein conveyed—have granted, sold and conveyed, and by these presents do grant, sell, and convey, unto J. F. Blackmon, of Bexar county, Tex., all that certain tract or parcel of land lying and being situated in Hays county, Tex., and being out of the J. M. Veramendi league No. 2 in said county and out of a certain tract of land conveyed by Headly Polk to Malone and Bost by deed dated June 21, 1904, recorded in Book 46, pages 514–516, Hays County Deed Records. The tract here conveyed is described by metes and bounds as follows: Begin at the N. corner of a 7-acre tract conveyed to G. Wilson by Eidson and Wood; thence S. 45 degrees E. 734.7 feet to W. A. Thompson's N. W. line; thence N. 44 degrees 40' E. 2,143 feet; thence N. 44 degrees W. 556.1 feet to iron stake; thence 44 degrees 40' W. 1,771.7 feet to stake; thence N. 45 degrees 20' W. 280 ft. to iron stake; thence S. 44 degrees 10' W. 402.8 feet to stake; thence S. 17 degrees 35' E. 114.6 feet to stake; thence N. 45 degrees E. 76.1 feet to the place of beginning, containing 30 acres of land. according to survey made by Orin E. Metcalfe county surveyor of Hays county, on February 2, 1911.

"It is further agreed as a portion of the consideration for this sale that said Wood and Eidson will furnish to the said J. F. Blackmon water to irrigate said 30 acres of land at and for the price of seven dollars and fifty cents ($7.- 50) per acre per annum; said water to be furnished whenever desired by the said J. F. Blackmon, but it is understood that said J. F. Blackmon shall pay for the said water delivered at his boundary lines the sum of seven dollars and fifty cents per acre per annum, payable at such times as may be agreed upon by the parties.

"To have and to hold the above-described premises together with all and singular the rights and appurtenances thereto in any wise belonging unto the said J. F. Blackmon and his heirs and assigns forever.

"And we do hereby bind ourselves, our heirs, executors, and administrators, to warrant and forever defend, all and singular, the said premises unto the said J. F. Blackmon and his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

"But it is expressly agreed and stipulated that the vendor's lien is retained against the above-described property premises and improvements until the above-described notes and all interest thereon are fully paid according to their face and tenor, effect, and reading, when this deed shall become absolute.

"Witness our signatures on this February 3, 1911. J. C. Wood.
"R. L. Eidson.
"Willie E. Eidson."

The deed was duly acknowledged, and was recorded in Hays county September 2, 1911.

The brief of appellee Giesen contains the following substantially correct statement:

"The facts as shown by the record are as follows:

"The 15 acres of land owned by appellee was a part of an irrigated farm known as the Malone and Bost irrigated farm, which had been under irrigation since about 1905.

"The said Malone and Bost irrigated farm contains 246.28 acres. A dam was built across the San Marcos river by Malone and Bost. A canal was cut across the Martindale road. Turbines were put down on the river. The water was lifted by the power from the turbine wheel into a tank on top of the ground and was conveyed over the farm by pipes and through ditches. It runs from this tank or system by gravity to the land. The whole 256 acres was irrigated by this system, and that includes the 15-acre tract which I own. The water is distributed over the land by means of iron pipes and ditches. The iron pipes, some of them run clear back to the end of the field, one of them runs right over next to my place, and one of them runs up to the upper end of Perry's place, and there are two or three more pipes that run along through the field in different directions to the high points. There is nothing necessary to be done in order for the water to flow through these pipes to the outlets, except to pump it into this cypress cistern.

"The witness Giesen further testified: 'I know the 30-acre Blackmon tract. The water came to the boundary lines of this tract in two places. In each place the water was carried to the boundary line in an iron pipe. The water reached right up to the boundary line in iron pipes. It reached up to within about, oh, I don't know, possibly, 15, 10, 15, or 20 feet

from my fence, and then there was a high dump thrown up. An elevated ditch runs over there and the water flowed out of the pipe into the ditch and then onto my land. There are two places where the water reached my land when pumped through these pipes—from the upper side to the Perry place, and also from the place it goes onto my land. There has been no change in those outlets since I have known that system. The 256-acre tract, the Malone and Bost farm, has been used principally for alfalfa and truck since I have known it, and since it was put under irrigation. Other crops have been grown on it from time to time. This country in which this land is located is subject to droughts.'

"The same witness also testified that the irrigated land mentioned had been mostly used for truck and alfalfa, and that a man would be throwing away his time to attempt to raise truck without water unless he gets an extraordinary rainfall, which is unusual in this country; that appellee's land is adapted, if irrigated, for truck, vegetables, etc.; that the appliances for putting water on this land were of a permanent character, and that the pipes, ditches, and hydrants were all in evidence and apparent to the eye.

"R. L. Eidson testified that he took charge of the irrigated farm of which appellee's land is a part in 1907, and said: 'I ran the tract as a whole. At the time I took charge of it the entire tract was under irrigation. The water was raised; the race—the water went through the race. The dam first backed the water up to give us pressure through the race, and it was raised by those turbine wheels into an elevated tank and carried out into the fields, when I first saw it. The dam is made of concrete. It extended entirely across the river from one side to the other. The walls of the race were made of concrete; the bottom is just natural dirt. The wheel house was constructed of concrete, cement, just the cement. The case was made of cement, and the building was made out of sheet iron and wood. Before I sold this land, Mr. Wood and I conveyed a 30-acre tract to J. F. Blackmon. After that we sold the balance of the irrigated farm to J. C. Hybarger. I afterward bought back the Blackmon tract. The Giesen 15-acre tract is a part of the Blackmon tract. I received water on the Blackmon tract. One right on the line of what is known as the Perry tract, next to it,. I guess; well it' is the line of the Perry tract or Mr. West's southeast corner; it comes right up to the Perry line. There was a water gate coming from the pipe. There was another place back down here at the house that I sold Mr. Giesen. The last time I was out there on the Giesen and Perry tracts, those were the same two places where the water was received. All the time that I owned all of that 15 acres, I kept it under a state of irrigation and under cultivation. There were ditches running all over my land which were open and visible. At the time that I went on this irrigated farm, the land, including what Mr. West now owns and what Mr. Giesen now owns, was all under one irrigation system, and that condition continued up until the time that I sold to Giesen. And during all of that time these ditches and pipes and everything were open and apparent so that anybody looking at the land could have told

that it was irrigated land, and that it was a part of one irrigation system.'

"The deed from Eidson and Wood to Blackmon is dated February 3, 1911. The deed from Eidson and Wood to Hybarger is dated August 28, 1911."

It was not shown or claimed that the defendant West had ever bound himself by contract to furnish water to the plaintiff. The judgment of the court, in addition to establishing the plaintiff's alleged easement upon and against the defendants' irrigation plant and the land upon which it is located, adjudged that the plaintiff recover nothing by his suit against the defendants R. E. Edison and D. J. Woodward, and that the defendant Eidson recover nothing in his cross-action against his codefendants, J. C. Hybarger, D. J. Woodward, and J. M. West, and that the defendant J. M. West recover nothing by reason of his cross-action against the defendant D. J. Woodward, and that the defendant J. C. Hybarger recover nothing as against the defendant D. J. Woodward. No one has appealed or assigned errors except the defendant J. M. West.

## Opinion.

The plaintiff prosecuted his suit in the court below, and recovered upon the theory that the stipulation in the deed from Eidson and Wood to J. F. Blackmon by which the former agreed to furnish to the latter water to irrigate the 30 acres of land conveyed by that deed created an easement against the remainder of the grantors' 250-acre tract of land, and especially against so much thereof as included the irrigation plant, which easement was attached to the 30-acre tract conveyed to Blackmon, and that, being such an easement, it became the property of the plaintiff, Giesen, when he acquired title to the Blackmon 30-acre tract. Counsel for the defendant West controvert the correctness of that contention upon several grounds, one of which is so clearly correct that we deem it unnecessary to assign any other reason for sustaining appellant's contention. That contention may be briefly stated as follows:

[1] Though an easement is an intangible right, it is so connected with real estate as that, on account of the statute of frauds, it cannot be conveyed otherwise than by a written instrument; and such instrument must so describe the easement, that is to say, the real estate burdened with the easement, as that the same can be identified by the description given, or by reference to some other instrument referred to in the deed.

The stipulation in the deed referred to' which undertakes to secure water rights to the grantee, J. F. Blackmon, does not, nor does any other portion of the deed in which that stipulation is incorporated, disclose the fact that the grantors, Eidson and Wood, owned any irrigation plant, nor is it dis-

closed by that instrument from what source they were to procure the water which they agreed to furnish to Blackmon, for the purpose of irrigating the land sold to him. For these reasons, we hold that the deed referred to, including the stipulation in reference to water for irrigation purposes, did not create an easement which would run with the 30-acre tract then conveyed to Blackmon, and therefore pass to persons holding the 30-acre tract under him.

But counsel for appellee Giesen makes the contention that, aside from the stipulations contained in the deed referred to, the mere transfer of the 30-acre tract of land from Eidson and Wood to Blackmon by implication created and carried with it an easement which ran with the land and entitled Blackmon and those who might hold under him to the right to have water furnished to the land from the irrigation plant that was then in existence. at the stipulated price of $7.50 per acre. The correctness of that proposition is denied by counsel for appellant; and the correct solution of the important question thus presented is decisive of the main question in this case. To reach such a conclusion, and at the same time give proper consideration to other business before the court, has involved much labor, some difficulty, and considerable time. However, we have reached a definite conclusion upon that subject; and that conclusion and the reasons therefor will now be stated.

[2] An easement has been defined to be a right which belongs to and goes with a certain piece of real estate belonging to one person, and thereby imposes a burden upon another piece of real estate belonging to another person. Such an easement, though an incorporeal right, is regarded as real estate within the purview of the statute of frauds; and the tract of land benefited by the easement is usually designated as the dominant estate, and the one upon which the easement is imposed the servient estate. Such an easement belongs to and goes with the dominant estate, though it may not be mentioned in the deed conveying the latter.

[3] In view of the foregoing definition of an easement, some courts and text-writers have declared that as long as a body of land is owned by one person no easement can exist by subdividing it into different tracts or by any other means. Some authorities depart from that doctrine to the extent of holding that, when the owner of a tract of land across which a highway runs or some other improvement of a similar nature has been made sells a portion thereof, his deed carries with it, by implication, the right of the purchaser to use such highway or improvement after it leaves the property conveyed to him, and where it passes over the remainder of the tract. That rule prevails in this state, as illustrated by Howell v. Estes, 71 Tex.

690, 12 S. W. 62. In that case Daniel Howell, being the owner of certain contiguous lots, constructed upon two of them two brick buildings, each two stories high, with a common party wall between them. The lower story in each building was designed and used as a mercantile storehouse. In the upper stories offices were constructed, which were leased to professional men. The upper rooms of the two buildings were reached by a single stairway, which was attached to the partition wall and opened upon the street or public square in front of the structure. However, the stairway was wholly within one of the buildings and upon the lot upon which that building was situated. Mr. Howell died, having by his will devised the building containing the stairway to his son, and the other to his daughter. The son denied the right of the daughter to use the stairway, which was located upon his lot, for the purpose of reaching the second story of the building upon her lot. The Supreme Court held that an easement existed in behalf of the daughter, by which she was entitled to use the stairway as an approach to the second story of her building, and that it passed to her by the provision of the will devising to her the adjacent building. Among other things, the court said:

"We think the weight of authority sustains the proposition that, if an improvement constructed over, under, or upon one parcel of land for the convenient use and enjoyment of another contiguous parcel by the owner of both be open and usable and permanent in its character, and of such a nature as does not require the act of man to perfect or indicate its use, and the owner alienate the latter, the use of such improvement will pass as an easement, although it may not be absolutely necessary to the enjoyment of the estate conveyed. Lampman v. Milks, 21 N. Y. 505, and authorities there cited; Ewart v. Cochrane, 4 McQueen, 123; Keiffer v. Imhoff, 26 Penn. State, 438; Kilgour v. Aschom, 5 Harris & J., Md., 82; Seymour v. Lewis, 13 N. J. Eq. 439; Elliott v. Rhett, 8 Rich. Law, S. C., 405; see also Freeman's notes to same case, 57 Am. Dec. 762, and authorities cited."

[4] In that case it will be noted that one of the essentials of an implied easement is that the improvement is so constructed that it is open, usable, and permanent, and of such a nature as does not require the act of man to perfect or indicate its use. In other words, if, in order for the grantee to obtain the benefit of the alleged easement, the grantor, or some one acting for him, will have to perform a service, then the doctrine of implied easement does not exist.

[5] In this case, while, at the time the deed in question was executed, the grantors owned an irrigation plant by which the entire 250-acre tract of land could be irrigated, it involved constant expense to do so; and it is no answer to say that furnishing water to

the 30 acres sold to Blackmon, at the same time that water was being supplied to irrigate the balance of the farm, would cost comparatively nothing. The contract required the grantors to furnish all the water that was necessary to irrigate Blackmon's 30 acres, regardless of whether the grantors were irrigating any of the balance of the 250-acre tract. Even if they were irrigating all of their own land, supplying the additional amount necessary to irrigate Blackmon's 30 acres would impose upon them an additional expense; and if such easement existed, as is contended for, and ran with the Blackmon tract, if the grantors had sold off all the remaining land, except 30 acres, including the irrigation plant, and had obligated themselves to furnish all the water necessary to irrigate the same, the purchaser thereof would have had as much right as Blackmon and his vendees to claim an easement in the plant, although it might have resulted in placing a great financial burden upon the grantors, in order to maintain the plant in condition to supply all the water necessary to irrigate the lands sold off, for an indefinite period of time, whether or not any was used and paid for.

[6] Furthermore, the contract under consideration obligates Wood and Eidson, the grantors in the deed, to furnish all the water necessary to irrigate the 30-acre tract conveyed to Blackmon, regardless of circumstances, conditions, or contingencies, and for such length of time as Blackmon should remain the owner of the land and desire to have it irrigated for the specified sum of $7.50 per acre per annum; and the payments were to be made "at such times as may be agreed upon by the parties." The language quoted indicates that the contract was intended to be personal, and that the parties to the contract had such knowledge of and confidence in each other as they were willing to leave the times of payment to be agreed upon thereafter. Furthermore, there are authorities which hold that, when the parties have entered into a written contract covering the subject-matter, the doctrine of implied easement cannot be invoked.

In the instant case Eidson and Wood, who sold the 30-acre tract of land to Blackmon, entered into a written contract by which they obligated themselves absolutely and unconditionally to furnish Blackmon with water to irrigate the land conveyed, and Blackmon obligated himself to pay to Eidson and Wood a specified sum per acre for the water so furnished. Neither the contract nor the deed in which it is incorporated disclosed the fact that Eidson and Wood owned any other land than the tract conveyed to Blackmon, or that they owned or contemplated the construction of an irrigation plant. It may be that at the time the contract was made Blackmon intended to cultivate the land himself for the remainder of his life, and he may have preferred an absolute contract by which he would be furnished with all the water necessary for that purpose, for an agreed price, or adequate damages, rather than an easement, which on account of future contingencies might not secure to him an adequate supply of water. At any rate, he had the power and right to make a contract to that effect, and, having done so, we are of the opinion that the law will not, by implication, confer upon him and those claiming under him an easement which would constitute a burden upon lands not mentioned in the contract.

[7] It is true that the contract required Blackmon to pay $7.50 per acre for the water used to irrigate his 30 acres of land, but it left to his option to determine how much, if any, water he would use. It is a matter of common knowledge that river valley lands located in the portion of the state where the land in question was situated are good agricultural lands, and sell for good prices, regardless of the question of irrigation. In fact, during some years the rainfall is such as to render irrigation almost, if not entirely, unnecessary. But, as rainfalls and droughts cannot be foreseen, Wood and Eidson, who obligated themselves to furnish Blackmon with water as desired by him, would have been required to maintain their irrigation plant in such condition as that the water could be supplied, although as a matter of fact during a particular year none may have been demanded and paid for; and for other reasons Blackmon may have used very little, if any, water during a particular year. Also, if the grantors, Wood and Eidson, had sold off six or eight other 30-acre tracts of the land, accompanied by the same contract that was made with Blackmon, and during a particular year none of the grantors had required water to irrigate their lands, Wood and Eidson would have received nothing for supplying water, although it would have been necessary for them to keep their plant in condition to do so, in order to avoid liability for damages if the water was demanded.

The doctrine of implied easements has been limited almost entirely to rights which are necessary to the enjoyment of the dominant estate, or to roadways and other means of egress and ingress which pass from the dominant estate onto and over the servient estate.

[8] Another rule of law pertinent to this case is as follows:

"The owner of land which is subject to an easement requiring the maintenance of means for its enjoyment is not bound, unless by virtue of some agreement, to keep such means in repair, or to be at any expense to maintain them in a proper condition. Following this rule, it has been held that the owner of an upper floor, who has an easement of support

in the lower floor, cannot compel the repair of the lower floor by the owner thereof. The duty and privilege of constructing an easement, or of making repairs for its use or enjoyment, rests on the owner of the dominent tenement, since the easement itself is his particular property." 9 R. C. L. p. 794, and authorities there cited.

"No duty is imposed upon the owner of the servient tenement to do any positive act; all that is required of him is to abstain from unlawfully interfering with the easement." Id. p. 798, and authorities there cited.

Is it to be supposed that by the execution of the deed and contract referred to it was the intention of the grantors that the grantee named in that deed and all who might hold under him in the future should have the right to even participate in the management, operation, and maintenance of the irrigation plant, which then belonged to the grantors? Reason and common sense furnish a negative answer to that question.

This case is not analogous to those where flowing streams are diverted and water is thereby caused to flow over other land belonging to the grantor, and upon or by land conveyed by him. In such a case nothing is required of the grantor in order for the grantee to obtain the benefit of the easement. But in this case the repair and maintenance of the irrigation plant was a constant and considerable expense to the grantors. It was necessary to pump the water from the river into a reservoir, and the proof indicates that the minimum annual expense of operating the plant was $600, and that during one year about $2,000 was expended for repairs. If the plaintiff had the implied right to have the water which flowed in the pipes adjacent to his land turned thereon, for the purpose of irrigating the same, and if that right passed to his assignees, it would seem that it was their duty to contribute to the maintenance, repair, and operation of the plant, unless it be held that the price to be paid for water was intended to compensate the grantors for that expense.

[9] As stated above, the deed and contract in question did not show or indicate that the grantors owned any other land, or that they possessed any particular irrigation plant, and the contract in plain and unambiguous language merely obligated them to furnish to the grantee water to irrigate the land conveyed to him by the deed. There is no ambiguity about the contract, which merely obligates the grantors in the deed to furnish sufficient water to irrigate the land, and binds the grantee to pay for the same at a specified rate per acre. It is true that in the habendum clause of the deed it is declared that J. F. Blackmon, his heirs and assigns, are to have and to hold the premises, "together with all and singular the rights and appurtenances thereto in any wise belonging." And it is also true that in the same clause

the grantors bind themselves, their heirs, executors, and administrators, to warrant and defend, "all and singular, the said premises unto the said J. F. Blackmon, and his heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." No such language was used in the granting clause of the deed, and it has been held that that clause cannot be enlarged by the habendum clause. But, however that may be, we hold that at the time the deed in question was executed the right to have water perpetually furnished to the land conveyed did not exist in favor of any one, and therefore such right was not an appurtenance to the land conveyed. This being the case, and there being nothing in the contract conferring such right, we hold that such right did not pass by the use of the language referred to in the habendum clause of the deed, and that the rights of the parties to that instrument were fixed and limited by the written contract embodied therein, which merely obligated the grantors in the deed, and no one else, to furnish to the grantee, and no one else, water to irrigate the tract of land thereby conveyed to the latter. Lakewood Heights Co. v. McCuistion (Tex. Civ. App.) 226 S. W. 1109; Howell v. Estes, 71 Tex. 690, 12 S. W. 62; McQuitty v. Harton (Tex. Civ. App.) 149 S. W. 777; Railway v. Smith, 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281; Miller v. Clary, 210 N. Y. 127, 103 N. E. 1114, L. R. A. 1918E, 222, Ann. Cas. 1915B, 872; Hurley v. Brown, 44 App. Div. 480, 60 N. Y. Supp. 846.

In the case of Miller v. Clary, supra, the court uses this language in connection with the covenant there under consideration, and which is very similar to the covenant in this case:

"The covenant to construct and maintain the shaft is known in the law as an affirmative or positive covenant. It compels the covenantor to submit not merely to some restriction in the use of his property, but compels him to do an act thereon for the benefit of the owner of the dominant estate. It is the established rule in England that such a covenant does not run with the land and cannot be enforced against the subsequent owner of the servient estate, either at law or in equity."

In that case the property upon which it was sought to fasten the easement was sufficiently described, but because the contract out of which it was alleged that the easement arose required the grantor, at his own expense, to do something to render the alleged easement effective, it was there held that it was not such an easement as would run with the land; and a somewhat similar ruling was made by the Supreme Court of this state, in Railway v. Smith, supra.

In the case at bar, if the contract created an easement, which would run with the water plant and other lands belonging to the

grantors, and bind subsequent purchasers thereof, then, by implication, it placed upon such purchasers a perpetual obligation to bear the expense of maintaining and operating the irrigation plant, and this would bring it within the rule announced in the two cases just referred to, even if the contract had stipulated that the water was to be furnished from the irrigation plant then owned by the grantors. But this case is much stronger in appellant's favor than the cases referred to, because it does not require the water to be furnished from the irrigation plant then owned by the grantors, and does not intimate that such plant was in existence.

In conclusion the writer may be excused from stating that an examination of several text-books and many decisions on the subject of easement has disclosed the fact that much diversity of opinion exists upon many phases of that branch of the law, and if our decision in this case is in conflict with some, it is believed to be in harmony with the weight of authority, and to rest upon sound reason. Also we deem it proper to say that we do not consider our decision as in conflict with the case of Edinburg Irrigation Co. v. Paschen, 235 S. W. 1088, recently decided by the Commission of Appeals, and approved by the Supreme Court. That decision holds that an easement existed in an irrigation plant by force of article 5002c of Vernon's Sayles' Statutes of 1914. That statute was enacted subsequent to the execution of the deed and contract upon which the plaintiff in this case relies as creating an easement in his favor, and it is not contended that it had any application to this case. If that statute had been in force at the time in question, it may be that the plaintiff could claim an easement under it, but, as it was not then in force, his rights must be determined by the rules of common law; and, when so determined, our conclusion is that he failed to show any right to recover, and judgment should have been rendered against him.

Our decision upon that question renders it unnecessary to pass upon the contention of appellant West to the effect that the court committed error in sustaining a demurrer to his cross-action against his codefendant Woodward. That action was contingent, his claim being that, if the plaintiff was entitled to recover from him, he was entitled to recover over against Woodward, from whom he purchased, and who had warranted his title. As we hold that the plaintiff was not entitled to recover against appellant West, it is unnecessary to decide any question concerning his right to recover against Woodward.

As between the appellee Giesen and appellant, West, the judgment of the court below will be reversed, and here rendered for West; and, as no one has appealed or assigned errors except the defendant West, the remainder of the judgment rendered by the court below will not be disturbed.

Reversed and rendered.

### On Motion for Rehearing.

The first question presented in appellees' motion for rehearing is the contention that this court has no jurisdiction; and therefore its judgment of reversal should be set aside, and the appeal dismissed. The reason for making this contention is the fact that R. L. Eidson, who was a defendant in the court below, and against whom appellee Giesen sought to recover judgment, in the event he did not obtain judgment against the defendant West, is not made an obligee in the appeal bond. That question is raised for the first time in appellees' motion for rehearing.

In reply to that part of the motion for rehearing, appellant contends:

First. That as no judgment was obtained against the defendant Eidson, and no appeal attempted from the judgment in his favor, it was not necessary to make the bond payable to him.

Second. That the bond given, even if defective, conferred jurisdiction upon this court and power to enter the judgment which it rendered.

[10] Third. That the motion of appellees to dismiss the appeal was not presented within 30 days after the filing of the transcript in this court, and therefore should be considered as waived under rule 8 for the Courts of Civil Appeals' (142 S. W. xi) appeals.

[11] Fourth. That this court, having acquired jurisdiction on the original bond, may permit the amendment of that bond as provided by articles 1609 and 2104 of the Revised Statutes, and appellant tenders another bond, curing the defect pointed out by appellee Giesen.

We sustain appellant's third and fourth contentions, and grant his request to be permitted to file a new bond curing the defect complained of.

[12] Counsel for appellee has filed a plausible argument to the effect that the statute authorizing the filing of new appeal bonds, curing defects in substance as well as in form, should not be so construed as to permit an appeal to be perfected in that manner after the time has expired for perfecting an appeal or writ of error, by filing the transcript in the Court of Civil Appeals. Notwithstanding that argument, we feel constrained to rule otherwise, and cite in support of our ruling Hugo v. Seffel, 92 Tex. 414, 49 S. W. 369; Williams v. Wiley, 96 Tex. 148, 71 S. W. 12; Waters-Pierce Oil Co. v. State, 107 Tex. 7, 106 S. W. 326; Tynberg v. Cohen, 76 Tex. 417, 13 S. W. 315; Bank of Decatur v. Preston Nat. Bank, 85 Tex. 562, 22 S. W. 579; Slayton v. Horsey, 97

Tex. 342, 78 S. W. 919; Lewellyn v. Ellis, 102 Tex. 297, 116 S. W. 42; Lewellyn v. Ellis, 50 Tex. Civ. App. 453, 115 S. W. 84; First State Bank & Trust Co. v. Mann (Tex. Civ. App.) 209 S. W. 683; Butts v. Davis (Tex. Civ. App.) 146 S. W. 1015; Hall v. Hall (Tex. Civ. App.) 198 S. W. 636; Newell v. Lafarelle (Tex. Civ. App.) 225 S. W. 853; Crawford v. Wellington R. R. Committee (Tex. Civ. App.) 174 S. W. 1004; Dunnagan v. East Tex. Colonization & Develop. Co. (Tex. Civ. App.) 198 S. W. 357; Oliver v. Lone Star Cotton Jammers & L. Ass'n (Tex. Civ. App.) 136 S. W. 508; Appel v. Childress, 53 Tex. Civ. App. 607, 116 S. W. 129; and Slaughter v. Morton (Tex. Civ. App.) 195 S. W. 897.

In Hugo v. Seffel, supra, the Supreme Court, in considering a bond which was payable to the wife only, held that the husband was a proper and necessary party to the appeal bond, and that he should have been named as an obligee therein, but quoted the statute which is now article 1609, and used the following language:

"It follows that since the passage of the statute quoted, a defective bond is sufficient to give the Court of [Civil] Appeals jurisdiction over the appeal. We therefore conclude that, whether the appeal bond was good or not, the Court of Civil Appeals had jurisdiction of the case and properly refused to set aside its judgment of affirmance on certificate."

In Williams v. Wiley, supra, an appeal bond, which was not given for any stated amount, was held to be sufficient to give the Court of Civil Appeals jurisdiction, and in so holding the Supreme Court used the following language:

"This [statute] seems to allow the curing of defects of every character in such bonds, and we can see no good reason why, under such a statute, a new bond may not supply the omission of the penalty in the first as well as any other defect. It is true the statute requires a bond in an amount, and that it has been heretofore held that the giving of a bond is essential to the jurisdiction of the appellate court; but it can no longer be held that such jurisdiction cannot be made to attach by a bond defective in substantial particulars. * * * If that which is filed is a bond, though a defective one, and appears to be an attempt to comply with the statute regulating writs of error, the jurisdiction necessarily attaches, because the court is empowered to entertain the case and permit the party to comply with the law. We think it cannot be successfully denied that the instrument in question is a bond. * * * The bond shows on its face that it was filed as an attempt to comply with the statute in order to prosecute the writ of error, complies in most respects with the statute, and must be held sufficient, under the liberal provision quoted, to give jurisdiction to the court, and entitle plaintiffs in error to file a new one."

In First State Bank v. Mann, supra, this court said:

"The courts of this state have passed upon every requisite of an appeal bond as above set forth, and have held, as to each of them, that a bond deficient as to any one of them is sufficient to confer jurisdiction on the appellate court, and may be amended when objected to."

The only other question we care to consider in this opinion is appellee's contention that the court erred in reversing and rendering judgment in favor of appellant West, because appellee Giesen was entitled to have the judgment affirmed as to $360, the damage sustained by him on account of appellant's failure to furnish water to irrigate his land for the year 1917. In support of that proposition it is contended on behalf of appellee Giesen that he pleaded a contract between himself and the defendant West by which the latter agreed to furnish him water to irrigate his land for the year 1917; that he submitted proof sufficient to sustain that allegation, and, as that phase of the case was not submitted to the jury, and as no one asked to have it submitted, it should be presumed, in support of the judgment to the extent of $360, that the court found in favor of the plaintiff upon that issue.

The pleading relied upon by appellee on that feature of the case reads as follows:

"Plaintiff further says that the defendant J. M. West became the owner of the land and estate herein described as belonging to him in the month of September, 1914, and he has since said date continuously owned the said estate; that plaintiff acquired title to the land that he now owns during the month of February, 1917; that during all of the time that said West has owned the land described as belonging to him up to the time hereinafter mentioned he has recognized the right of the land now owned by plaintiff to receive water for irrigating purposes from the pumping plant and through the ditches, pipes, and conduits upon his said land, and when plaintiff was delivered possession of said land in the early part of the year 1917, to wit, in February, 1917, the said J. M. West was then furnishing water from said pumping plant and through said pipes, ditches, and conduits to the land of plaintiff; plaintiff accordingly prepared his said land for use as irrigated land, and said defendant J. M. West and his agents well knew that plaintiff was expecting to receive water for irrigating purposes for the purpose of raising a crop upon said land for the year 1917; that plaintiff was never notified that sufficient water would not be furnished him, but, on the contrary, the said J. M. West undertook to furnish this plaintiff with water for irrigating purposes, and at all times acquiesced in plaintiff's statement as to his right to receive water as aforesaid, and accepted from plaintiff a portion of the compensation which the deed from Eidson and Wood to Blackmon provided should be paid for such water. Wherefore plaintiff says that, regardless of whether or not his land was legally entitled to receive such water, the said West impliedly contracted and agreed to furnish him with necessary water for irrigation purposes for the year 1917. Plaintiff alleges that, relying upon

such implied agreement as well as upon his legal right to receive such water, he, the said plaintiff, went to great expense in preparing his said land to make a crop of cabbage and other truck and to grow on said land crops of various kinds for the year 1917."

It may be seriously doubted if the facts alleged in that plea showed that any contract was entered into binding appellant to furnish water. When analyzed, it seems to contain allegations only that the defendant, without any alleged consideration, acquiesced in the plaintiff's contention that he was entitled to water, not under a special contract, but on account of the alleged easement by which the land was entitled to have water furnished from the defendant's irrigation plant.

[13] But, if it be conceded that the plaintiff's pleading presented the issue of a separate and distinct contract for water for the year 1917, counsel for appellee have referred us to no testimony, and we have found none, which would sustain a finding that any such contract was made. Furthermore, the judgment of the court shows with reasonable certainty that it was rendered for the plaintiff solely upon the theory of his right to water under his alleged easement, and not upon a contract separate and apart from that creating the easement; and for that reason we do not think the statute invoked by appellee, providing that in certain contingencies it will be presumed that the trial judge made a finding of fact in favor of the successful litigant, is applicable.

The other questions presented in the motion for rehearing have been duly considered and are decided against the appellee and in favor of the appellant.

Motion overruled.