## M. A. TYNBERG V. ISAAC AND HERMAN COHEN.

### No. 2609.

1. **Practice—Plea in Abatement.**—A plea in abatement tried before a former appeal, though submitted with the merits, is not subject to be again tried, though on the former appeal the judgment was reversed on a ground not affecting the decision on the plea in abatement.

2. **Damages.**—A levy on a small portion of a stock of goods (the merchant still continuing business) can not be regarded as the proximate cause of damages from loss of trade.

3. **Fact Case.**—See opinion for facts held insufficient to authorize a verdict rendered for actual damages.

4. **Damages.**—By the announcement made in some cases that exemplary damages awarded should not be disproportionate to the actual damages, is not meant that one should be either in exact or approximate ratio to the other, but that the imposition of

heavy exemplary damages when the actual damage is small is a circumstance to aid in determining whether passion rather than reason influenced the verdict.

5.  **Excessive Damages.**—When exemplary damages should be awarded, while the amount is largely in the discretion of the jury in the first instance, it is also a matter in the discretion of the trial judge afterwards; and if on motion for new trial based on an excessive verdict for damages he should be satisfied that the verdict was the result of passion or prejudice, the verdict should be set aside; any other rule would establish an absolutism based on the infallibility of jury discretion.

6.   **Damages—Attachment.**—The rule that an action for malicious prosecution in a criminal or civil action will not lie until the prosecution has terminated favorably to the party prosecuted, has no application to a suit for damages based on the wrongful and malicious suing out of a writ of attachment, and which is begun before the attachment suit is terminated; the claim for damages may be asserted and procede to trial under reconvention with the attachment suit.

7.   **Judgment on Appeal.**—Notice of appeal given and bond filed clothes the Supreme Court with jurisdiction over the entire judgment, and its reversal annuls the judgment of the court below in toto.   Hence, if judgment be rendered against all the defendants except one, in whose favor judgment was rendered in the court below, and the rest appeal, and the judgment below is reversed, it is reversed as to all. If the appeal bond is not made payable to such defendant, and no question was made as to its sufficiency, he can not afterwards complain; objection should have been made in proper time and manner.

8.   **Jurisdiction.**—While generally the giving of a bond strictly as required by statute is essential to the exercise of jurisdiction of the Supreme Court, the jurisdiction over the subject matter in controversy is conferred by the Constitution, and parties may waive irregularities in matters of detail by which that jurisdiction is brought into exercise, and which were intended for their benefit.

ERROR from Washington.   Tried below before Hon. I. B. McFarland. The opinion states the case.

*Bassett, Muse & Muse,* and *Swearingen,* for plaintiff in error.—1.   The uncontradicted evidence showed that Mrs. Cohen was a member of the firm of William Cohen & Co. at the time of the levy, and the special finding of the jury to the effect that I. and H. Cohen alone composed the firm is without evidence to support it.

2.   Upon the facts proven Mrs. Cohen was an ostensible and not a dormant partner, and as such was a necessary party to the suit.   Speake v. Prewitt, 6 Texas, 252, 258, and authorities cited.

3.   The special finding of the jury on the issues raised by the plea in abatement, taken in connection with their findings on other issues, renders it probable that jurors were either actuated by passion or prejudice, or that they were misled by the charges and erroneous rulings of the court.

4.   The burden of the proof was on the plaintiffs to show that the attachment was sued out wrongfully, and the evidence fails in that respect to support the verdict.

5.   Even should the court not concur with us in that view, we submit no proper element of actual damage was shown, and the verdict should

have been for nominal damages only; and that the verdict for $150 actual damages is not supported by the evidence. Tynberg v. Cohen, 67 Texas, 220, 222, 223; Drake on Att., sec. 175; Field on Dam., 559.

6. The facts that William Cohen & Co. were embarrassed and unable to pay their current obligations, that suit was pending against them, that they were disposing of their property out of the usual course of their business and at an apparently ruinous sacrifice, that the managing partners were transferring the assets of the firm to an apparently different firm, which, on examination, proved to have no existence, and that their real and personal property was being converted into negotiable notes made payable to the plaintiffs individually, were so many badges of fraud, any one of which would, if unexplained, have supported a verdict declaring the transaction void as to creditors. Traylor v. Townsend, 61 Texas, 144, 146, 147; Seeligson v. Brown, 61 Texas, 180, 182, 183; Bump. on Fraud. Con., pp. 76, 100; Wait on Fraud. Con., secs. 224, 227, 228, 233, 241.

7. Although the circumstances were explained on the trial to the apparent satisfaction of the jury, they must still be regarded as sufficient to constitute probable cause; and probable cause being shown, no exemplary damages can be recovered, and the verdict for exemplary damages would be unsupported, even though the writ had been sued out maliciously. Kauffman & Runge v. Wicks, 62 Texas, 234, 238, 239; Ramsey v. Arrott, 64 Texas, 320, 324, 345; Culbertson v. Cabeen, 29 Texas, 247, 255, 256; Jacobs v. Crum, 62 Texas, 401, 413.

8. Even should the court hold that the case was a proper one for the imposition of exemplary damages, the verdict for $10,000 must still be regarded as excessive and wholly disproportionate to the injury sustained and to the act which caused it. Willis v. McNeill, 57 Texas, 466, 479, 480; Railway v. Nichols (unreported), cited in 57 Texas, 480.

9. The court erred in overruling the defendants' demurrer and exceptions to the plaintiffs' petition:

(1) Because the suit, being for damages for an alleged malicious attachment sued out in the County Court, was prematurely brought while said attachment suit was still pending; and said error was repeated in the charge which authorized the jury to find for the plaintiffs damages, actual and exemplary, for the malicious suing out of the writ, and in refusing the charge requested by the defendants to the effect that this action, being brought while said attachment suit was still pending, could not be maintained.

(2) Because the matters alleged in the fourteenth paragraph of the petition set up a cause of action against the defendant Newbouer alone, and was improperly joined with the alleged cause of action against all the defendants jointly; and the result of said error is manifest in the verdict of the jury which awards actual damages only in the sum of $150

against all of the defendants jointly, while it awards punitory damages against Newbouer alone in the sum of $10,000.

10.　A several cause of action against one defendant can not be joined in the same suit with a joint cause of action against him and others. To authorize the joinder, all the causes of action must be against all the defendants jointly. 1 Chit. Plead., 231, 232; Chamberlain v. Shaw, 18 Pick., 378; Strickland v. Barrett, 20 Pick., 415; Lockwood v. Ball, 1 Cow., 322; Moore, v. Platte County, 8 Mo., 467; McKee v. Kent, 25 Miss., 131.

11.　This suit, in so far as it is an action for suing out the attachment maliciously, is governed by the principles of the common law applicable to actions for malicious prosecution. Jacobs, Bernheim & Co. v. Crum, 62 Texas, 401, 416; Drake on Att., secs. 729, 738; 1 Wait's Act. and Def., p. 428; Lovier v. Gilpin, 6 Dana, 321.

12.　An action for a malicious attachment or other civil prosecution can not be brought until the termination of the attachment suit. 8 Wait's Act. and Def., pp. 387, 388, 390, 391; 2 Greenl. Ev., secs. 449, 452; Wheeler v. Nesbit, 24 How., 544; Feazle v. Simpson, 2 Ill., 30; Nolle v. Thompson, 3 Metc., 121; Rea v. Lewis, Minor (Ala.), 382, O'Brien v. Barry, 106 Mass., 300; Hamilburgh v. Shepard, 119 Mass., 30; Cardival v. Smith, 109 Mass., 158; Gillespie v. Hudson, 11 Kans., 163; Gorrell v. Snow, 31 Ind., 215.

13.　The elements of damage stated in the petition—that the credit of plaintiffs was injured, that goods in course of transportation were stopped, and that their trade at home had been injured and disturbed—are not actual damages which may be recovered in an action on the bond, but they can be recovered only in a suit for the malicious suing out of the writ. Wallace v. Finberg, 46 Texas, 35; Tucker v. Hamlin, 60 Texas, 171, 174; 1 Wait's Act. and Def., p. 428, sec. 2; Pettit v. Mercer, 8 B. Mon., 51; Campbell v. Chamberlain, 10 Ia., 337; Floyd v. Hamilton, 33 Ala., 235; State v. Thomas, 19 Mo., 613; Meyers v. Farrell, 47 Miss., 281; Smith v. Story, 4 Humph., 169; Ivy v. Barnhartt, 10 Mo., 151; McKellar v. Couch, 34 Ala., 336; Tallant v. Gas Co., 37 Ia., 261; Wood v. Weir, 5 B. Mon., 544.

14.　The court erred in overruling the defendant Wenar's motion in arrest of judgment on the ground that he was discharged by the former verdict and judgment in his favor, the same never having been set aside, reversed, or otherwise vacated as to him, and being still in full force and binding on all the parties to the suit.

*Seth Shepard, F. Charles Hume* and *C. R. Breedlove,* for defendants in error. — 1.　The case was fairly submitted to the jury, and the verdict is amply sustained by the evidence.

2.　The suit was not prematurely brought. The doctrine invoked by

plaintiffs in error, that the attachment suit must have been determined before this action for damages could be maintained, has application to an action for malicious prosecution of a criminal. It has been held in our court that there is no right of action for the malicious prosecution of a civil suit.

3. The court did not err in overruling defendant Wenar's motion in arrest of judgment, because the effect of a judgment of this court on a former appeal (67 Texas, 220), reversing the judgment below, was to set that judgment entirely aside and award a trial *de novo* as to all parties. Wooters v. Kauffman, 67 Texas, 488, 497; Railway v. James, 73 Texas, 12.

STAYTON, CHIEF JUSTICE.—This cause was before this court at a former term, and is reported in 67 Texas, 220, where will be found a statement of the case.

On the trial from which that appeal was taken a plea in abatement based on the nonjoinder of Eliza Cohen, who was claimed to be a copartner with Isaac and Herman Cohen, was filed, tried, and decided against appellants.

It was then urged that the plea in abatement should have been tried before the cause was tried, but it was held that this was a matter within the discretion of the court; and further, that her relation to Isaac and Herman Cohen was such as to make the judgment to be rendered in the cause binding on her.

On the last trial the court again submitted the plea in abatement with the main issue, and declined to require a separate finding on that. This is assigned as error.

If, on the first trial, the plea in abatement had been tried before the cause was tried on its merits and decided against appellants, it would not have been their right to have that tried again, unless on appeal some error had been found in that proceeding. That on the former trial the plea in abatement was submitted with the merits does not affect the question.

When once tried and decided adversely to a defendant, he is not entitled to have a plea in abatement tried again, though on appeal the judgment may be reversed on some ground not affecting the decision on the plea in abatement.

The purpose of the plea in abatement was to have a decision whether the proper plaintiffs were before the court. It in no way affected the merits of the controversy, and a practice which would lead to a resubmission of a plea in abatement every time a new trial on the merits was granted, or every time a cause was tried after an appeal and reversal on the merits, would lead to interminable confusion.

We are of opinion that the court would not have erred had it declined on the last trial to submit any issue on the plea in abatement, and the

manner of its submission, it having been decided against appellants, is an immaterial question.

There was a verdict for $150 against principal and sureties on the attachment bond as actual damages, and also a verdict against the surety who acted as agent in suing out the writ for $10,000 as exemplary damages. It is urged that both are excessive.

The jury evidently found that the writ was wrongfully sued out, but that the principals and one of the sureties were not actuated by malice or evil motive in doing this.

The question then arises whether the evidence justified a finding that appellees had suffered actual damages to the extent of $150, for none other could be imposed for the mere wrongful use of the writ.

The goods seized were a part of a stock of goods in the second floor of appellees' business house, valued by the sheriff at $900, but by appellees at $1800.

The business of appellees is not shown to have been in any manner interfered with by the sheriff while engaged in making this levy upon but a small part of the stock of goods. The sheriff remained in possession of the goods about three hours during the time he was engaged in making an inventory and packing the goods in trunks, at the expiration of which they were replevied. The goods are not shown to have been injured in any respect, nor is there any evidence that a single sale was lost or interfered with by the sheriff's possession; the goods were not moved from the store. The actual damages resulting from these facts must have been very small.

One of appellees testified, over objection, that the levy "interfered with our business, of course. We were all broke up. The levy affected us in this way: people who had dealt with us went somewhere else to trade, after the levy, to the extent of $50 or $60 per day from immediately after the levy until now." A levy upon an insignificant part of a merchant's goods could not be said to be the proximate cause of such a loss of trade, and if the jury considered this, or the general expressions of the witness quoted, in making an estimate of the actual damages, they erred.

He further stated: "We had ordered $900 worth of shoes of Claflin & Thayer, Boston; one Harrison had agreed to take one-half of this bill; the order was not filled. * * * Harrison was to take half of the Claflin & Thayer bill; he was to pay cash, with ten per cent added to cost in the store. This sale had been made a week or more prior to the levy." Other evidence shows that Claflin & Thayer declined to ship these goods because they saw in a Boston paper an announcement of the failure of appellees, with the publication of which appellants are not shown to have had any connection, except in so far as the levy of attachment may have given ground for such a report.

If it be conceded that the loss of this sale could be considered as actual damages, it would only amount to about $45 with interest; but it would be difficult to hold that the levy was the proximate cause of this loss. Too many independent agencies intervened the levy and loss. The causal connection was broken.

Some person doubtless sent the report to Boston. Some person gave it to the publisher and he published it, and in doing this some or all of them made a false statement if there be any truth in the evidence found in the record. It can not be presumed, in the absence of proof, that these things were done by appellees, or any of them. The evidence tends to show that Claflin & Thayer would have shipped the goods but for the announcement seen by them.

He further stated: "We had given an order for goods to E. S. Jaffray & Co., New York; the goods were shipped and arrived the day before the levy of attachment. Some of the goods had been disposed of to Lidnor and Harry Hancock, and Jaffray & Co. heard of the attachment, and through their agent here, * * * the goods being already unpacked, were repacked and turned over to the agent of the house on his demand. We had to pay the money back to get those goods that had been sold."

The value of the goods thus returned is not shown, and those sold to Lidnor and Hancock each amounted to about $15. The goods had not been paid for, and it is not shown what damage resulted from the cancellation of the sale, nor that they might not have been paid for and retained. As to these goods the question of proximate cause again arises.

He further stated that "another bill shipped to us by Anderson & Co., Troy, New York, came the same day, and as we had sold some of these goods we got the money and paid their bill to their agent here."

The amount of this bill is not shown, but under the evidence we are unable, as was the jury, to say what damage resulted from the fact that those goods were paid for. If their price was due it ought to have been paid, and if not due, further proof was necessary to show any damages, even if the use of the attachment could be said to be the proximate cause of any resulting injury.

There was much evidence tending to show loss of credit, but it is well settled that such evidence can not furnish a basis for actual damages.

We have considered all the evidence claimed to have bearing on the amount of actual damages, and while we are loth to set aside the verdict of a jury on a question of this kind, we feel constrained to hold that there was no evidence on which the jury was authorized to find that appellees sustained actual damages to the amount of $150.

The testimony of the sheriff, uncontradicted, was that "the goods were not taken from the store at all. No one was interfered with or interrupted in any way, as we were upstairs, and the trading was going on downstairs as usual. The clothing levied on was appraised at $900, and

was in six or seven trunks, where they were left. In the evening the goods were released upon replevy bond being given."

The evidence of appellee who testified in the case was to the same effect.

There was much evidence tending to show that the attachment was wrongfully sued out, and much tending to show that malice may have influenced the agent who sued it out, and much in rebuttal of this, which renders it likely that in estimating actual damages the jury considered evidence which could properly be considered only on question of right to and amount of exemplary damages. On another trial the jury should be informed of the only purpose for which much of the evidence found in the record can be considered.

In view of the disposition that will be made of the case, it does not become necessary now to pass on the sufficiency of the evidence to sustain the verdict for exemplary damages.

It is insisted, however, that there is a rule of law which requires that in such cases there be some fixed proportion between the actual and exemplary damages awarded.

It has been said in some cases that exemplary damages should not be disproportioned to actual damages; but it was not meant by this that the one should be in any exact or approximate ratio to the other. All that was meant was that the imposition of heavy exemplary damages where the actual damages recoverable were small was a fact which ought to be looked to to determine whether passion rather than reason dictated the verdict. Whenever this appears, or is rendered highly probable by contrasting the actual injury with the extent of punishment awarded, looking to all the circumstances of aggravation, new trials should be granted.

A power such as may be exercised by juries in awarding exemplary damages is liable to great abuse, may often lead to great oppression, and there is no class of cases in which the conservation of the judge should more frequently find field for action.

In cases based on facts which merit condemnation or even punishment, though not by law constituting crime, juries, under commendable impulses, but with judgment warped by passion, no doubt often render excessive verdicts, and if it be conceded that such verdicts are to stand because the matter was within the discretion of the jury, then we have an absolutism, a despotism, nowhere else found in our form of government.

The matter is in the discretion of the jury in the first instance, but it is the duty of the judge to see that this discretion is not abused.

The power to grant new trials where verdicts are evidently excessive, as on other legal grounds, is one given firmly and fearlessly to be exercised, and it can not be surrendered.

Verdicts of juries are entitled to the highest consideration, but it must be remembered that they are not always right, and if uncontrolled will in some cases lead to oppression.

The verdict for exemplary damages was large—many times larger than the Legislature has authorized to be imposed by way of fine for acts malicious and highly aggravating in character; and it will be well for the judge, should such another verdict be brought in, to carefully determine whether justice between the parties or the welfare of society demands the imposition of such a punishment.

Looking to the issues in the case, we are of opinion that the court did not err in admitting the evidence of Giddings, senior and junior, E. L. Salley, W. H. Munson, and H. Cohen, which was objected to.

The sixth and eighth charges requested by appellants and refused were embraced in charges given so far as they were correct, and for this reason the court did not err in refusing them.

It is urged that the action could not be maintained because commenced before attachment suit was terminated. It has frequently been held that an action for malicious prosecution in a criminal or civil action will not lie until the prosecution has terminated favorably to the party prosecuted.

The rule appealed to has no application, however, to this class of cases, although in a sense actions for malicious prosecution, for no issue whether the attachment was wrongfully or maliciously used could have been tried in the attachment suit. Fortman v. Rothier, 8 Ohio St., 550.

The constant practice in this State has been to permit a defendant in attachment to reconvene for damages resulting from a wrongful or malicious use of the writ, and the trial of this proceeds with the main action.

The plea in reconvention is essentially a separate action. Such a practice is at war with the theory that an attachment suit must have terminated before an action for malicious prosecution can be based on it.

The rule only applies when the issue to be tried in the last action was necessarily included in the first.

There was no misjoinder of parties or causes of action, for appellees sought to recover against all of appellants damages actual and exemplary on account of an act in which they all participated.

On the former trial there was a judgment against all the defendants except the defendant Wenar, but there was a judgment in his favor. The former appeal was prosecuted only by defendants against whom judgment was rendered, and it seems that the appeal bond was not made payable to Wenar as well as to plaintiffs, but no question as to its sufficiency was raised, and the judgment was reversed.

On last trial, judgment for actual damages was entered against Wenar as well as the other defendants, and motion in arrest of judgment was made by him on the ground that he was discharged by former judgment, and that reversal of that did not vacate it as to him.

Notice of appeal from the former judgment was given, and of that Wenar was bound to take notice.

An appeal bond was filed by the other defendants, which may have been defective because not made payable to him as well as the plaintiffs, but if he desired to take advantage of this he should have done so in proper time and manner. Notice of appeal given and bond filed clothed this court with jurisdiction over the entire judgment, and its reversal annulled it in toto. It stood after reversal as though it had never been rendered.

· The main purpose of a bond is to give security to the adverse party, and if the bond filed be not such in all respects as the law requires for this purpose, this court will not consider the case over the objection of the party entitled to such protection if objection be made in proper time and manner.

There are expressions to be found in opinions from which it might be inferred that the giving of a bond strictly in accordance with the statute was essential to the jurisdiction of this court, but it must be understood that the Constitution confers on this court what jurisdiction it has as to subject matter, and that parties may waive irregularities as to matters intended solely for their benefit.

The case stands as to Wenar as though a new trial had been granted after the former judgment was rendered.

For the error before noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 4, 1890.