PENNANT OIL & GAS COMPANY v. LIGHT-FOOT. (No. 11560.) *

(Court of Civil Appeals of Texas. Fort Worth. May 1, 1926. Rehearing Denied June 5, 1926).

1. Courts ⬨170—Amount in controversy must be determined on plaintiff's petition alone, in absence of plea in abatement, ruling on general demurrer, plea that plaintiff's allegations were fraudulently made to confer jurisdiction, or objection to evidence of value.

Amount in controversy, in action in which plaintiff and defendant had each borrowed from the other and failed to return certain pipe, must be determined from plaintiff's petition alone, in absence of plea in abatement raising question of jurisdiction, ruling on general demurrer, plea that plaintiff's allegations were fraudulently made to confer jurisdiction on court, or objection to evidence of value of pipe.

2. Courts ⬨169(5)—County court held to have jurisdiction of controversy, where plaintiff alleged he borrowed $1,176.01 worth of pipe and casing from defendant, who had borrowed $1,-829.32 worth from plaintiff, and each failed to return what they borrowed; "set-off."

County court held to have jurisdiction of controversy in which plaintiff alleged he borrowed $1,176.01 worth of pipe and casing from defendant, who had borrowed $1,829.32 worth from plaintiff, and each failed to return what they borrowed, since a "set-off" operates to ascertain debt made up of difference between debits and credits (citing Words and Phrases, "Set-Off").

3. Limitation of actions ⬨49(1)—Two-year statute of limitation against plaintiff's cause of action for pipe borrowed but not returned by defendant held to run from time of refusal to pay therefor.

Two-year statute of limitation against plaintiff's cause of action for pipe borrowed but not returned by defendant, from whom plaintiff borrowed other pipe, held not to run until refusal to adjust difference in price, where plaintiff did not know amount borrowed and parties negotiated for friendly settlement.

On Motion for Rehearing.

4. Appeal and error ⬨1056(1)—In action for value of pipe which was borrowed and not returned, exclusion of opinion evidence of value of pipe, though error, held harmless, as excluded evidence would probably not have changed result.

In action for value of pipe which was borrowed and not returned, exclusion of witness' opinion as to value of pipe, though error, held harmless, as excluded evidence would probably not have changed result.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Action by R. P. Lightfoot against the Pennant Oil & Gas Company. · Judgment for plaintiff, and defendant appeals. Affirmed.

H. A. Turner, of Fort Worth, for appellant. J. C. Smith, of Fort Worth, for appellee.

CONNER, C. J. R. P. Lightfoot instituted this suit against the Pennant Oil & Gas Company in the county court of Tarrant county for civil cases, on January 24, 1925, alleging that in the month of March, 1922, he loaned to appellant 45 joints or 990 feet of 12½-inch casing and 1,952 feet of 2-inch line pipe; that thereafter he (Lightfoot) borrowed from appellant 74 joints, or 1,546 feet of 6⅝-inch casing, and also one joint of 5¾₆-inch casing, 20 feet in length. It was alleged that each was legally bound to return to the other said casing and pipe, upon demand, or to pay the reasonable cash market value therefor; that neither of them returned to the other the casing and line pipe so borrowed, but that each appropriated the same; that by reason of such fact there arose both a legal and an implied obligation on the part of each to account to the other for the reasonable cash market value of said casing and pipe so appropriated by them, respectively; that the reasonable cash market value of the casing and pipe loaned by the plaintiff to the defendant was the sum of $1,829.32, and that the reasonable cash market value of the casing loaned by the defendant to the plaintiff was the sum of $1,-176.01. The plaintiff sought by his suit to recover the difference between the alleged cash market value in the casing and pipe respectively loaned, which difference was the sum of $653.31.

There was neither allegation nor proof that the plaintiff and the defendant had ever agreed upon the reasonable market value of the casing and pipe loaned by the one to the other; nor was there any pleading or proof of an agreement that the amount due from the plaintiff to the defendant should be applied as a credit or payment on the amount due from the defendant to the plaintiff.

The defendant answered by a general demurrer, a general denial, and a special plea of the two years' statute of limitation.

The court charged the jury, submitting special issues. The charge, issues, and jury's answers thereto are as follows, to wit:

"Gentlemen of the Jury: This case is submitted to you upon special issues, and you will answer the following questions:

"(1) Upon what date, if any, did plaintiff first have notice of the amount of pipe obtained by defendant from the plaintiff? Ans. On or about January 31, 1923.

"(2) When, if ever, did defendant first deny that he owed the plaintiff anything by reason of the loan transaction between plaintiff and defendant? Ans. On or about January 31, 1923.

"(3) What amount, in dollars and cents, if any, was the reasonable cash market value, per lineal foot, on the date you have found in answer to special issue No. 2, in the Pioneer field of the 6⅝-inch pipe loaned to plaintiff by defendant? Ans. 85 cents per lineal foot.

"(4) What amount, in dollars and cents, if any, was the reasonable cash market value per lineal foot, on the date you have found in answer to special issue No. 2, in the Pioneer field, of the joint of 5⅝-inch pipe loaned plaintiff by defendant? Ans. 98 cents per lineal foot.

"(5) What amount, in dollars and cents, if any, was the reasonable cash market value, per lineal foot, on the date you have found in answer to special issue No. 2 in the Pioneer field, of the 12½-inch casing loaned to defendant by plaintiff? Ans. $1.50 per lineal foot.

"(6) What amount, in dollars and cents, if any, was the reasonable cash market value, per lineal foot, on the date you have found in answer to special issue No. 2, in the Pioneer field, of the 2-inch line pipe loaned to defendant by plaintiff? Ans. 10 cents per lineal foot.

"(7) What amount, in dollars and cents, if any, was the reasonable cash market value, in the Pioneer field, in March, 1922, per lineal foot, of the 12½-inch casing loaned by plaintiff to defendant? Ans. $1.80 per lineal foot.

"The burden of proof is upon the plaintiff to establish by a preponderance of the evidence the dates inquired about in questions Nos. 1 and 2, and the amounts inquired about in questions Nos. 3, 4, 5, 6, and 7.

"You are the exclusive judges of the credibility of the witnesses, of the weight to be given their testimony, and of the facts proved, but the law you will receive from the court as given you in this charge and be governed thereby."

At the request of defendant, the court submitted special issues 2 and 3, which, together with the jury's answers thereto, are as follows:

"No. 2. Did the plaintiff, R. P. Lightfoot, know, prior to January 1, 1923, that the 12½-inch casing borrowed from him by the defendant would not be returned? Ans. No.

"No. 3. Did the plaintiff, R. P. Lightfoot, agree with the defendant prior to January 1, 1923, that the differences between them on account of casing loaned by the one to the other, should be settled by the payment of money the one to the other instead of returning the casing so loaned? Ans. No."

Upon the verdict so returned, the court entered its judgment in favor of plaintiff for the sum of $395.81, with interest thereon from the 15th day of June, 1925, to which the defendant excepted and has duly prosecuted this appeal.

[1, 2] Appellant first urges that the trial court was without jurisdiction, the insistence being, in substance, that, in the absence of allegation and proof of an agreement between the parties as to the value of the casing loaned by one to the other, and in the absence of an agreement that the amount due from the appellee to the appellant should be credited upon the amount due from appellant to appellee, the amount in controversy to be determined was the alleged value of the casing and pipe loaned by the respective parties which exceeded the jurisdiction of the county court. In determining this question, we wish to observe that appellant presented no plea in abatement raising the question of jurisdiction, nor does the record disclose that the court was called upon to rule upon his general demurrer, and no ruling thereon appears. Nor does the record disclose that during the trial appellant at any time objected to the evidence of the values of the respective parcels of pipe on the ground that the court was without power to determine such values. Nor, as necessarily appears from our statement of appellant's pleadings, was there any plea in its behalf charging that the allegations of plaintiff's petition had been fraudulently made for the purpose of giving jurisdiction to the court. So that our determination of the question must be based upon the allegations of plaintiff's petition alone.

Appellant invokes the case of Gimbel & Son v. Gomprecht & Co., 89 Tex. 497, 35 S. W. 470. That was a case in which the plaintiff sued in the county court to recover the sum of $764 upon an open account alleged to be due, and sued out an attachment and levied on defendant's goods. The goods were sold under order of court for $885, and the money was deposited in court to await the result of the suit. But defendant, among other things, pleaded in reconvention for actual and exemplary damages, on the ground that the writ was obtained wrongfully, maliciously, and without probable cause. The actual damages were alleged at $797.21, and the exemplary damages at $966, making a total damage sought in the plea of reconvention of $1,763.21. Plaintiffs in the suit excepted to the plea in reconvention on the ground that the county court had no jurisdiction. The question was certified to the Supreme Court, and that court held that the county court was without jurisdiction of the plea in reconvention. We think, however, that that case is plainly distinguishable from the one we have before us. The plea in reconvention was essentially a cross-action by the defendants, as to which they were the plaintiffs. Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315.

In the case of Swigley v. Dickson, 2 Tex. 193, Dickson sued in the district court upon a note for $150 to be discharged in lumber at $15 per thousand. A credit of 3,500 feet of lumber was entered on the note, which reduced the amount actually claimed by the plaintiff to less than $100, which was then the minimum of the district court's jurisdiction. In the determination of the question, the Supreme Court took cognizance of the credits which had been allowed by the plaintiff, and held, in effect, that the balance due

was the amount in controversy, and that that amount was below the jurisdiction of the district court.

In the case of Thomas v. Hill, 3 Tex. 270, the plaintiff sued to recover money alleged to have been expended by him in payment of debts of an estate of which he was then administrator, and the defendant (the administrator de bonis non) pleaded in reconvention, claiming of the plaintiff the hire of certain negroes and the proceeds arising from the sale of property belonging to the estate, which he alleged the plaintiff had converted to his own use. The court held that the matter was not one for unliquidated damages and in the nature of a demand in reconvention, but that the rights asserted by the plea were rights ex contractu. The court said:

"The rights asserted by the plea were rights arising ex contractu. They arose upon the implied contract that the plaintiff should refund the money of the estate received by him, and pay for the hire of the negroes what it was reasonably worth. The demand was ascertained and rendered certain by the evidence, and did not come within the description of that which it is not permitted the defendant to set off, where the suit is founded on a certain demand; * * * that the amount of the demand required to be ascertained by evidence, was no objection to its admissibility as a set-off under the statute.

"The object of the law is to void a multiplicity of suits. Where, therefore, the respective demands of the parties are of such a nature as to admit of their being all settled in one action, it is the intention of the law that this shall be done, and that parties be not permitted to resort to separate actions, to settle disputes which may conveniently be determined in a single controversy. The law, it is said, abhors a multiplicity of suits; and it appears to have been the policy of our remedial system effectually to guard against such a consequence."

In the case of Davis v. Pinckney, 20 Tex. 341, it was held that the justice's court had jurisdiction of a suit for the balance of an account, where the balance did not exceed $100, notwithstanding the debit side of the account may amount to more than that sum. In that case the debits amounted to $122.70 and the credits to $23.95.

In the case of Dalby v. Murphy, 25 Tex. 355, the cases above from the 2 and 20 Texas were cited with approval, and it was held that a defendant in the justice court might plead in set-off an account for more than $100 and recover against the plaintiff judgment for the balance, or excess, if any, of his account against the plaintiff, when such balance or claim is for an amount within the justice's jurisdiction.

In Words and Phrases, vol. 7, p. 6439, under the title "Set-Off," we find the following:

"Where parties have had dealings so as to produce mutual debts or credits or reciprocal demands growing out of the same transaction, it is the balance only which exists as the debt; and, in the case of bankruptcy of one of the parties, a set-off of their mutual demands is not a means of paying one debt in preference to other debts which the bankrupt owes, for, to the extent of the demands set off or compensated, there was no debt. From the moment they were contracted they extinguished each other. Hence, the operation of a set-off is, not to pay, but to ascertain a debt made up of the difference between the amounts of respective debits and credits. In re Globe Ins. Co., 2 Edw. Ch. 625, 627."

We are of opinion that what we have quoted from Words and Phrases has due application to the case before us. There was evidence in behalf of appellee to the effect that the parties, not only on the occasions mentioned in the pleadings, but prior thereto, had been in the habit of borrowing, as occasion required, pipe, one from the other. The two claims were essentially of the same character, and we know of no sound reason upon which to base a holding that the plaintiff might not, under the circumstances alleged, recognize the right of appellant to a claim justly due it upon an implied contract. Having done so, the actual amount in controversy is shown by the difference between the claims. In determining the question from the face of the pleadings, we must accept the facts as alleged, there is nothing left for determination, and, accepting such statements as true, there was no uncertainty relating to values, nor was there uncertainty in the amount claimed by the plaintiff, which amount clearly was within the jurisdiction of the county court.

[3] Appellant further urges that the plaintiff's claim was clearly barred by the two-year statute of limitation. It is insisted, in effect, that, inasmuch as it was alleged that appellant borrowed appellee's pipe in March, 1922, and it was not returned, plaintiff's cause of action was one for conversion, arising when appellee's pipe was not returned within a reasonable time after it had been borrowed. If the case is to be treated as one of conversion, arising in 1922, then it is clear that plaintiff's cause of action would be barred, but we are not disposed to construe the record in that light. The evidence shows that appellee's pipe was taken by one of appellant's representatives at a time when neither appellee nor any one in his authority was present, but this seems to have been accepted by appellee as a matter of course; no objection at the time or thereafter having been urged to the fact, nor was objection on appellant's part made to appellee's borrowing the pipe for his use. It further appeared that appellee in fact was without knowledge of the amount of pipe that had been taken by appellant, and that it was some time before it was ascertained that the respective parties would be unable to return the pipe they had borrowed, after which there was from time to time an effort made on the part of plaintiff to ascertain in whose way the balance would be, and that he in fact did not ascertain

the amount of pipe that had been taken by appellant until in January, 1923. The statement of facts discloses that on January 31, 1923, the president of appellant company wrote to appellee from Tulsa, Okl., stating:

"I tried to see you while I was in Cross Plains but was unsuccessful. Following are the figures on our exchanges of pipe which Mr. Eyless furnished me:

"Lightfoot to Pennant:
45 joints 12½" casing...............990' 6"
2" line pipe.......................1,950' 2"
"Pennant to Lightfoot:
74 joints 6⅝ .....................1,546' 5"
1 joint 5⅜₆ ........................  20'

"According to the way that I would figure this, I believe the transactions are about equal. * * *

. "I would be very .glad to have you write me frankly in the matter and let me know if this coincides with your views."

On July 24, 1923, appellee wrote to appellant:

"Attention Mr. Goldrick. When I saw you last, you asked me to find out the relative value of 6⅝" and 12½" casing as in the spring of last year. I left a few days after that and have not been back to Cross Plains."

The values were then stated, and the writer further states:

"I do not ask that you figure my pipe at the high mark and yours at a low figure. We agreed to a relative condition pipe. I think if we figure that 12½" at $1.65 or $1.70 and the 6⅝" at $.70 or $.75, we would have about the relative value.

"We have had a hard time getting this matter cleared up. I have always found Mr. Harrell very agreeable and have not been in a rush. As a matter of fact I did not know how much of my pipe you had gotten until I received your letter of January 31."

On July 26th, appellant wrote, by Mr. Goldrick, its president, to Mr. Lightfoot at San Antonio, stating:

"Dear Mr. Lightfoot: Replying to your favor of the 24th, just received, we are as anxious as you are to get this matter adjusted. I think that you should let us know the prices which in your opinion should govern on the pipe, and, having this information, we will be able to get at a figure right away. I am leaving Saturday night to be gone three or four days in the East, but I wish that you would kindly write me at once.

"Kindest regards and best wishes,
"Very truly yours."

Numerous other letters passed between the parties from which it plainly appears that the transactions were understood and treated merely as exchanges of pipe, and that the delay occurring after January 31, 1923, was occasioned by friendly letters endeavoring to satisfactorily adjust the difference in price of the pipe, and that this suit was not instituted until some time after appellant finally refused to adjust the difference in claims, which refusal was well within the two-year period of limitation pleaded by appellant.

A further contention is that the court erred in excluding the testimony of the witness, C. C. Neeb. If permitted, he would have testified that in Cross Plains, in the spring of 1922, "he thought he knew as well as anybody the reasonable market price of second-hand casing in the Pioneer field in the spring of 1922; that is, that he knew what he paid for it and what others paid for it, but there was no fixed market price." He was then asked to give his opinion as to the value of 12½-inch pipe at the time and place stated, and would have testified, if permitted, that it was worth $1.50 per foot. He refused to state in express terms that there was a market value and that he knew what that market value was, and plaintiff objected to the testimony on the ground that it was abundantly established by other witnesses that there was a market price and that this witness had not qualified to give his opinion, and that the time fixed by the witness was in the spring of 1922, which was not the period upon which the value should be determined. The court sustained these objections. The examination of the witness as to his qualification was quite extended, and we will not undertake to set it out. It, however, as a whole, inclines us to the view that the witness sufficiently qualified himself, and that, if we assume, as we shall do for the purposes of our conclusion, that the court committed error in excluding the testimony of the witness, we nevertheless think that it was harmless. By reference to the verdict of the jury, it will be seen that the jury found the value of the 12½-inch pipe to be just what this witness said it was in his opinion. Furthermore, its alleged value was only $1.65, and the judgment of the court, instead of being of $653.-31, as claimed by appellee, was in fact rendered for the sum of $395.81, and there is no contention and can be none, so far as we can see from the record, that the reduced amount indicated by the judgment is to be accounted for on the theory that appellee failed to prove the respective prices as alleged, or that the pipe not referred to in the answers of the witness was of no value.

We accordingly conclude that all assignments of error should be overruled, and the judgment affirmed.

## On Motion for Rehearing.

[4] We find that we were in error in stating that the witness Neeb would have testified that the 12½-inch pipe in the spring of 1922 "was worth $1.50 per foot." As disclosed by the statement of facts in an indefinite way, he would have testified that such pipe was worth "$1.05" per foot. As stated in our original opinion, his examination was

somewhat extended. We copy the following from the statement of facts as perhaps illustrating the general character of the witness' testimony:

"Q. What business were you engaged in in the spring of 1922? A. Well, in the banking business and oil business.

"Q. At what place? A. The bank was at Cross Plains, and the oil business was in the Pioneer field at Cross Plains.

"Q. Did you have any experience, or business, in selling casing and pipe during the spring of 1922? A. No, sir; I bought casing.
\* \* \* \* \* \* \* \*

"Mr. Turner: Q. Do you or not know the market value of secondhand casing, once run, in the Pioneer field in the spring of 1922? A. I know what we paid for it; I don't know whether we paid too much or not.

"Q. What did you pay for it? A. $1.05."

Considering the testimony of the witness as a whole, the time fixed by the witness in stating the value, etc., in the light of the testimony of other witnesses and the finding of the jury, we retain the conclusion originally expressed that the error of the court in excluding the testimony of this witness was harmless. In the light of the record as a whole, we think it extremely improbable that a different result would have been reached had the testimony of the witness been heard by the jury in court.

In other respects we think our views have been sufficiently expressed in our original opinion, to which we adhere. We think the cases cited in behalf of the motion are distinguishable from the case made by the pleadings and the evidence in this case, and the motion for rehearing will accordingly be overruled.