James F. BURKE d/b/a Burke's Drugs, Appellant,

v.

T. L. BEAN, Appellee.

No. 6586.

Court of Civil Appeals of Texas.

Beaumont.

Nov. 29, 1962.

Rehearing Denied Dec. 19, 1962.

Melvin Combs, Beaumont, for appellant.

Sample & Walker, Beaumont, for appellee.

McNEILL, Justice.

Bean had a gall bladder attack and his physician gave him a prescription for Oxacholin tablets. The prescription was taken March 28, 1960, to Burke's Drug Store to be filled, and the pharmacist there, by mistake delivered Oxsoralen capsules to Bean. The doctor prescribed a pill after each meal. After Bean had taken one or two doses of the medicine he called his doctor and told him he was in much pain and needed a sedative, and the doctor prescribed relief medicine for him, which he took for about two days. In the meantime he continued to take the improperly filled prescription.

Bean's brother happened to be visiting from Mississippi, and desiring to have the gall bladder prescription refilled for him, Bean went to another drug store owned and operated by C. P. Rainey. Bean took the container along that had the improper medicine in it and while he was at Rainey's, Rainey called Burke's Drug Store and talked to Burke. It is not clear in the record as to just what day this took place. Witnesses fixed it as between the 4th and 7th of April. (The parties stipulated that the re-fill by Burke was on the 8th). In the telephone conversation, Rainey obtained

knowledge of what the original prescription called for and told Burke that the prescription as filled contained pink Oxsoralen capsules. Burke realized then that a mistake had been made. He testified that he thought Rainey had refilled the prescription but he told Rainey to have Bean come by and he would adjust the price charged. Rainey then told Bean to go to Burke's but did not tell him a mistake in filling the prescription had been made. Bean then took the prescription to Burke's to be refilled for his brother. He did not see Mr. Burke and neither did Burke see him. He obtained the proper refill this time from the pharmacist, but paid the same amount of $6.50 for this prescription as he had been charged for the first prescription, although the price for the proper drug would have been $2.75. This refilled prescription was turned over by Bean to his brother who returned to Mississippi a short while later.

Bean continued to suffer from the gall bladder pains in much the same severe way as he had suffered since the original attack about March 28th, but he kept on taking the original incorrectly filled prescription until April 11th, when he returned to his physician. Upon examination of the bottle of medicine the doctor told him that he had been taking the wrong medicine, whereupon Bean went to Rainey's Drug Store and obtained the proper filling of the prescription, and then began to take the prescribed gall bladder medicine, and soon showed improvement.

The literature furnished by the manufacturer of Oxsoralen recommends that a person, after having taken these capsules for two weeks, should have a liver test run on him. A few days after learning he had taken the wrong medicine, Bean saw Dr. James Q. Blackwood, a dermatologist. Dr. Blackwood ran three such tests and found that the liver functions were within normal limits. This doctor, called by Bean, testified the Oxsoralen did Bean no good. He suggested additional liver tests at indeterminate future dates, although it was his

opinion that the patient would have no future trouble as result of having taken the Oxsoralen capsules. Dr. H. E. Alexander, who testified at the request of Burke, was of the same opinion.

As a result of the incorrectly filled prescription, Bean sued Burke for damages, both actual and exemplary. In answer to issues submitted, the jury found that Oxsoralen capsules were supplied to Bean instead of Oxacholin tablets as prescribed; that Bean was injured as a result of the improper filling of the prescription; that the improper filling of the prescription was negligence and a proximate cause of plaintiff's injuries; that he was actually damaged in the amount of $500.00.

In addition to the above issues, on the exemplary damage feature of the case, the court submitted further issues which were found in Bean's favor, as follows: Burke intended to conceal from Bean the fact that the prescription had been improperly filled; that Burke's failure to advise Bean of the mistake in filling the prescription constituted gross negligence. In connection with this issue the term "gross negligence" was defined as "that entire want of care which would raise the belief that the act or omission complained of was the result of a conscious indifference to the right or welfare of the person or persons to be affected by it." In answer to the issue as to what amount should be awarded as exemplary damages, the jury found $2,000.00. In answer to further issues, the jury found that Bean was not contributorily negligent in not recognizing the difference between the medicine with which the prescription was first filled and that when correctly filled; nor was he negligent in failing to inquire why the refilled prescription was not the same (in appearance) as upon the first filling.

The characteristic symptoms of an acute gall bladder attack are pain between the shoulder blades, cramping pains and nausea. The Oxacholin tablets prescribed by the physician were for the purpose of aiding the gall bladder to drain and would thereby re-

lieve pain. The object of giving Oxsoralen capsules is to tan the skin of the patient. The side effects of taking these sun-tan capsules are the same as those of gall bladder attacks, and in addition they will give a person a feeling of depression, nervousness and insomnia. Bean testified that he had all of these symptoms for the two weeks he took the wrong medicine, and that his feeling of nervousness and depression persisted for some time afterward. He was also unable to work for several weeks during which time he had to employ a substitute to do his work.

■ No serious attack is made upon the award of actual damages, but it is urged that the award for exemplary damages is without legal basis. We do not agree. In filling prescriptions a druggist is required to use that high degree of care which a very prudent and cautious person would exercise under the same or similar circumstances in that business. Peavy v. Hardin, Tex.Civ.App., 288 S.W. 588; 28 C.J.S. Druggists § 6, p. 511. The general customer ordinarily has no definite knowledge concerning many medicines, and must rely implicitly upon the druggist, who holds himself out as one having the peculiar learning and skill, and license from the state, to fill prescriptions. He owes to his customer purchasing a prescription that highest degree of prudence, thoughtfulness, and vigilance consistent with the reasonable conduct of the business, in order that human life may not constantly be exposed to the danger flowing from the substitution of a harmful drug for a beneficial drug ordered by the customer's physician.

■■ Argument is stressed that Burke's negligence was entirely passive, not positive and consequently gross negligence could not be charged to him. Burke had the duty under the circumstances of this case upon discovery of the error, to make prompt correction thereof. That very high decree of thoughtfulness and vigilance in the original filling of the prescription placed by the law upon the druggist must also enjoin him to exercise that same vigilance and care for his customer upon the discovery of a mistake to see that it is promptly rectified. This Burke failed to do. Bean argues that contrary to Burke's duty in this respect, by charging the original price for the refill that was paid for the improperly filled prescription, Burke affirmatively attempted to conceal his mistake. The jury accepted this view. Undoubtedly Burke had the patient's name and address in the city, and in addition, a telephone was listed in the name of Mrs. T. L. Bean, wife of plaintiff. No effort was made by Burke after he learned of the mistake to reach Bean and correct it, although Bean continued to take the wrong medicine for three days thereafter, and only stopped when he went back to his physician on April 11th who told him of the mistake. The above outline of facts, in our opinion, justified the jury in concluding that the druggist showed a conscious indifference to the rights and welfare of the plaintiff and was guilty of gross negligence. Missouri-Pacific Railway Co. v. Shuford, 72 Tex. 165, 171, 10 S.W. 408; 17 Tex.Jur.2d 245–247.

■ It is urged that the amount of exemplary damages allowed were excessive, because well out of proportion to the actual damages allowed. The ratio of 1 to 4, as exists in this case, has been upheld several times in this state. 17 Tex.Jur.2d 256. With respect to the amount of the damages awarded, much is left in the first instance to the discretion of the jury. Tynberg v. Cohen, 76 Tex. 409, 13 S.W. 315. We hold that this discretion was not abused. Schutz v. Morris, Tex.Civ.App., 201 S.W.2d 144.

The judgment is affirmed.