**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellant,**

v.

**Debbie BAKER, Appellee.**

**No. B14-82-302CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 20, 1983.

Rehearing Denied March 10, 1983.

Leland B. Kee, Angleton, Alex Guevara, Houston, for appellant.

Laron D. Robinson, W. Michael Leebron, II, Leebron & Robinson, Iris Hefter Robinson, Hicks, Hirsch, Glover & Robinson, Houston, for appellee.

Before PAUL PRESSLER, MURPHY and ROBERTSON, JJ.

ROBERTSON, Justice.

This is a limited appeal by appellant from a final judgment entered against it and a co-defendant, Texas/New Mexico Power Company, after a jury trial. On January 29, 1982, the trial court rendered judgment and awarded appellee $241,585.87 in actual damages and $500,000 in exemplary damages—$250,000.00 against appellant and Texas/New Mexico, respectively. A release of judgment was filed as to Texas/New Mexico and it does not join in this appeal. On May 7, 1982, the trial court entered an "Order Modifying Judgment and Requiring Remittitur" which required appellee to remit $75,000.00 of the exemplary damages assessed against appellant. Appellant limits its appeal to that portion of the final judgment awarding exemplary damages based on gross negligence. Appellee brings two counterpoints. We affirm the judgment as modified.

In appellant's second point of error, it contends the evidence is legally and factually insufficient to support a finding of gross negligence. In testing a jury finding of gross negligence, the same "no evidence" test applied to any other fact issue applies. *Burk Royalty Co. v. Walls,* 616 S.W.2d 911 (Tex.1981). Therefore, when there is some evidence of a defendant's entire want of care we are bound by the jury's finding of gross negligence in testing for the legal sufficiency of the evidence. *Id.,* at 921. Appellant's contention that the jury's finding of gross negligence is against the great weight and preponderance of the evidence requires us to consider and weigh all the evidence and to reverse the judgment only if we conclude the verdict is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. *In re: King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1952); *Glover v. City of Houston,* 590 S.W.2d 799 (Tex.Civ. App.—Houston [14th Dist.] 1979, no writ).

On November 10, 1978, appellee was injured while employed as a laborer for Nell's General Contractors. Nell's had contracted with appellant to install "squirrel guard" casing to its telephone cable to prevent squirrels from chewing through the cable. On the day of the accident, appellee was on the ground handing sections of the casing up to a co-worker, who was standing on a ladder hooked onto the cable installing the casing onto the cable. A rotten telephone pole, owned by appellant, broke and caused a 7200 volt primary phase main power line to strike appellee, causing the injuries made the basis of this suit. The pole, installed in 1952, was an end pole supporting four electrical lines, including the 7200 volt primary line, and one telephone cable. This end pole was "guyed" by two guy lines and anchored into the ground by anchor rods. The pole broke near or below the ground level because it had rotted, and the anchor rods, which were rusted, pulled out of the ground due to the weight of appellee's co-worker on the ladder.

Lee Cook, Angleton District Manager for Texas/New Mexico, discovered the pole was rotten on October 18, 1978, and prepared a sketch of the pole and easement. With it correctly addressed, he mailed it in the normal course of business to appellant's engineering department requesting appellant replace the pole. Appellant neither admitted nor denied receiving the sketch. Copies of the sketch which Cook mailed to his own company's engineering department were received on October 20, 1978. On November 2, 1978, Roy Norrell, one of appellant's engineers, received a copy of the notice and sketch directly from Cook (this was some eight days before the accident). Yet, no work order was prepared by appellant to change out the pole. There was also some evidence appellant had actual knowledge of the pole's dangerous condition even before Cook notified them when, nearly a year before, a woman who lived near the pole called appellant and Texas/New Mexico to complain about the pole's condition. There was also testimony Cook received a call, some weeks prior to October 18, 1978, from an employee of appellant who told him of a rotten pole next to the one that fell on the

occasion in question. Appellant's employee thought it was a Texas/New Mexico pole, but when Cook checked he determined the pole belonged to appellant and so notified appellant's employee. Appellant's engineers testified, that in accordance with the usual company policy, they physically check the poles, guy lines, and equipment before preparing a work order of any type. Since the pole in question was included in the work order issued by appellant to Nell's to install squirrel guard casing, it should have been checked in March or April, 1978, when the work order was originally issued.

Some of appellant's employees testified warning signs were used to identify defective poles and such signs or tags were a good idea for safety reasons. However, two of three engineers of appellant responsible for the Angleton area said they were not issued such tags, and the third said he occasionally carried tags with him. Appellant never replaced the rotten pole even after it fell—Texas/New Mexico changed it out.

■ First, we must decide if there was some evidence of such a want of care, either active or passive, to raise a belief of conscious indifference to the rights of others. The evidence shows appellant (1) knew it was not unusual for wooden poles to rot; (2) knew end poles were more critical than other poles and when they rot they will fall unless replaced; (3) knew a rotten pole supporting 7200 volts of electricity creates a dangerous situation; (4) had no regular systematic inspection program to determine whether its poles and guys which support electrical lines in Angleton, Texas were adequate; (5) obtained actual knowledge of the poles defective condition long before the accident in question; (6) is presumed to have received notice sent to it by Lee Cook of Texas/New Mexico through the U.S. mails, *Wichita Valley Ry. Co. v. Davis,* 275 S.W. 169 (Tex.Civ.App.—El Paso 1925, no writ); (7) received additional actual notice through its engineer, Roy Norell, over one week before the accident occurred; (8) had the means to warn those who might lawfully come upon their easement of an apparent defect in its poles by affixing warning tags to bad poles; and (9) issued warning tags only to linemen, not to engineers even though they were the ones responsible for making the decision on whether a pole should be changed out.

■ What lifts ordinary negligence into gross negligence is the mental attitude of the defendant; the plaintiff must show the defendant was consciously, i.e., knowingly, indifferent to his rights, welfare and safety. *Burk Royalty,* 616 S.W.2d at 922. In other words, plaintiff must show the defendant knew about the peril, but his acts or omissions demonstrated he didn't care. *Id.* Such conduct can be active or passive. *Id.* From the evidence outlined above, we find there is some evidence to support the jury finding appellant demonstrated gross negligence in its handling of this matter and overrule its contention the evidence is legally insufficient.

■ Next, we must test the sufficiency of the evidence to determine if the jury's finding of gross negligence was so against the great weight and preponderance of the evidence so to be manifestly wrong and unjust. Appellant presented evidence its employees were instructed to always test a pole for safety prior to working on or around it. Appellant showed films demonstrating the installation of squirrel guards to Alice Annell Freudenspurng and Joe Frank Freudenspurng, owners of Nell's General Contractors. (This evidence was controverted by Alice Annell Freudenspurng who denied receiving any instructions on how to inspect telephone poles. She testified the film they reviewed on installing squirrel guards was a sales film, demonstrating why the manufacturer's type of squirrel guard was advantageous; the film had nothing to do with inspecting or testing poles by hitting them with a hammer, or sticking a screw driver in them, or anything else. She testified the warning tags appellant sometimes used were never shown to her).

■■ As part of its contentions that the evidence was factually insufficient for a

jury finding of gross negligence, appellant argues there was no finding a vice-principal of the corporation acted in a grossly negligent way so as to bind it. We hold appellant has waived this point. No objection was made to the court's charge on this basis, nor was any issue presented to the trial court concerning the authority of any employee of the telephone company. Where one fails to request an issue or object to the manner of submission of an issue concerning the scope of an employee's authority to bind the corporation, the corporation:

> [Puts] itself in the position of agreeing to the court's determination of such issue, and in such case it will be presumed that the trial court found the issue in such a way ... as will support its judgment. (Cite omitted).

*M.C. Winters, Inc. v. Cope,* 498 S.W.2d 484, 489 (Tex.Civ.App.—Texarkana 1973, no writ). Because appellant has waived the issue being submitted to the jury, the omitted issue of whether the employees involved in this case are vice-principals of appellant is deemed found by the trial court in such a manner as to support the judgment. Tex. R.Civ.P. 279; *Treasure City v. Strange,* 620 S.W.2d 811, 813 (Tex.Civ.App.—Dallas 1981, no writ).

In reviewing all of the evidence, we cannot say the jury's finding of appellant's gross negligence is against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Therefore, appellant's second point of error is overruled.

Appellant's first point of error complains of the trial court's definition of negligence holding it to a high degree of care in connection with the accident causing appellee's injuries. It contends this definition was calculated to lead the jury to believe that appellant's failure to exercise a high degree of care would justify a finding of gross negligence. While appellant included this point of error in its "Notice of Limited Appeal," it concluded its notice with the following:

> Each and all of the foregoing points of error will be urged on appeal only to the extent that they each bear on the findings of gross negligence and the award of punitive damages against this Defendant.

Where a party limits the scope of its appeal, it is bound by that limitation and may not complain of another portion of the judgment. See, *Mathews v. Mathews,* 414 S.W.2d 703 (Tex.Civ.App.—Austin 1967, no writ). Since appellant does not contest the portion of the judgment finding it to be negligent, we find its objections to the definition of negligence goes outside the scope of its limited appeal. We hold appellant's first point of error is not before us and is overruled. As a result we do not consider appellee's first counterpoint which contends negligence was proven as a matter of law.

Appellant's third point of error contends the award of $250,000.00 in exemplary damages is so grossly excessive that the trial court's remittitur of $75,000.00 will not cure such error. Appellee brings a counterpoint contending the trial court erred in ordering the $75,000.00 remittitur. The rule regarding an exemplary damages award alleged to be excessive is expressed in *Skillern & Sons, Inc. v. Stewart,* 379 S.W.2d 687 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.):

> The question of the measure of exemplary damages comes under the general rule that, where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is a result of passion, prejudice or corruption, or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. *Tynberg v. Cohen,* 76 Tex. 409, 13 S.W. 315 [sic]; *Home Furniture Co. v. Hawkins,* Tex.Civ.App., 84 S.W.2d 830 [sic]; 17 Tex.Jur.2d 255, § 186.

*Id.* at 692. Another requirement is such damages should be reasonably proportionate to the actual damages found by the jury. *Southwestern Investment Company*

*v. Neeley,* 452 S.W.2d 705, 707 (Tex.1970). Ratios of 40:1 and 15:1 have been upheld as not excessive. *Tynberg v. Cohen,* 32 S.W. 157 (Tex.Civ.App.1895, writ ref'd); *Dial Finance & Thrift Company v. Dennis,* 403 S.W.2d 847 (Tex.Civ.App.—Amarillo 1966, no writ). Here, the jury awarded $241,-585.97 in actual damages to appellee. The exemplary award of $250,000.00 against Southwestern Bell is slightly larger than a ratio of 1:1. The trial court will look at the ratio between the actual and exemplary damages to determine if the award is the result of jury passion or bias. *Cotton v. Cooper,* 209 S.W. 135 (Tex.Comm'n App. 1919, judgmt adopted). Based upon this ratio it cannot be said the jury was inflamed to the point that its award was the result of passion or bias. We find the jury's verdict of $250,000.00 was conclusive against Southwestern Bell, and was not grossly excessive. Appellant's third point of error is overruled. We further find the trial judge ordering a $75,000.00 remittitur from the exemplary damages awarded against Southwestern Bell was error and sustain appellee's second counterpoint.

Therefore, we set aside the trial court's "Order Modifying Judgment and Requiring Remittitur" and affirm the trial court's original judgment.