## LOFTUS v. RAY.
### No. 2620.

Court of Civil Appeals of Texas. El Paso.
Feb. 11, 1932.

Rehearing Denied March 3, 1932.

John & Levy, of Houston, and E. R. Campbell, of Houston, for appellant.

Sam G. Croom, of Houston, for appellee.

WALTHALL, J.

Appellee brought this suit against appellant to recover damages for the conversion of specific articles of personal property consisting of household goods, itemized, and the value of each article stated, and which household goods appellant alleges he was using in the operation of a rooming house; also, that appellant in converting said property to his own use and benefit was actuated by malice and by a bitter, resentful, and malicious feeling of ill will toward appellee, and by a desire to injure and damage appellee, by reason of which appellee sought to recover exemplary damages, stating same.

Appellant answered by general demurrer, which was not passed upon by the court, and by general denial, and other pleas reflected in the special issues submitted to the jury and which issues we need not more fully state.

The jury found that appellant agreed with appellee that appellee might remain in said building (rooming house) and operate his business without the payment of any rent until appellant should give appellee notice to vacate said premises; that there was a market value on May 1, 1930, of the property described in appellee's petition, except as to the bathtub, plumbing fixtures, lumber, and lighting fixtures; that the reasonable market value of the property described in appellee's petition, except the items above mentioned, was $650; the jury found against appellant on the issue of exemplary damages and stated the amount that appellee was entitled to receive at $2,000.

The court received the jury's verdict and entered judgment for appellee for the amount found. The jury having made no finding on the items of bathtub, plumbing fixtures, and some pieces of lumber and lighting fixtures, the court found that "under the uncontroverted testimony in this case the market value of said property as of May 1st, 1930, is $315.00." The court in the judgment added that value as found to the amount found by the jury on the other items, and entered judgment for the aggregate amount of $2,965.

The court overruled appellant's motion for a new trial, and appellant appeals.

### Opinion.

Appellant's first two propositions complain of the court's finding that appellee owned and had the right to remove the bathtub, plumbing fixtures, lumber, and lighting fix-

tures, on the ground that no evidence was offered as to appellee's ownership of such property; that the record shows that such property was attached to and was a part of the building; that the value of such property was controverted and such issue should have been submitted to the jury and not found by the court.

■ The uncontroverted evidence shows that appellee owned the furniture, having purchased it from C. H. Stell, and Stell purchased it from S. O. Moodie. Both Moodie and Stell testified to such fact. Appellee testified that when he purchased the rooming house from Stell, those partitions were already there. Moodie testified that he personally placed the partitions and fixtures in the rooming house when he first leased from appellant. The lease from appellant to Moodie provides: "It is further understood and agreed that any material supplied in making improvements or alterations on said premises by said Moodie or assigns may be removed at the termination of this lease."

The second and third floors constituted the rooming house in question. Moodie's lease extended from 1919 to 1924. Thereafter appellant leased to Tarrant and Abernathy to 1927. By a sublease, with approval of appellant, Tarrant and Abernathy extended the lease involved here, to Moodie, to the second and third floors, to 1927. While the Tarrant and Abernathy lease and the Moodie sublease were in force, appellant made a new lease to Tarrant ending 1929. We have said that in order to say that we understand that the Tarrant lease contains the same provision as to removal of material supplied as contained in the Moodie lease. The record shows that Stell had paid the rent to February, 1930, and from that time appellee was a tenant of the premises at will under Loftus, and for which he was to pay no rent, as found by the jury.

The verbiage of the lease as to the right of removal of things supplied is not as clear as it might be, but Moodie testified that he put in the partitions, the lighting fixtures, the plumbing fixtures, "and all of those things after the contract was signed and under this contract."

■■ When the right of removal is given in a lease, and the same right is continued in a subsequent lease, the owner of the things supplied has the right of removal. When a lease reserves the right of removal of things supplied to the premises by the lessee, the fact of such reserved right shows that it was the intention of the parties to the lease that the things supplied should remain personalty, be and remain the property of the lessee, and not to become a part of the realty and the property of the landlord. In other words, the intention to retain ownership in the lessee of the property supplied is indicated by the reservation in the lease, and the rule of law as to fixtures yields to the special provision of removal in the lease. Wright v. Macdonnell et al., 88 Tex. 140, 30 S. W. 907; Hertzberg v. Witte, 22 Tex. Civ. App. 320, 54 S. W. 921. The market value of the bathtub, plumbing fixtures, lumber, and lighting fixtures, was sufficiently shown. Appellee qualified to state the values of the things he bought of Stell, and made an inventory of the several items and the values he put on the property; said he had been in the rooming house business for years, had bought and sold rooming house furniture of the kind in question, had gone to different stores in Houston and compared values, and knew the reasonable market value there of this particular furniture at the time in question. When he took the inventory he appraised the values accordingly and stated the value of the bathtub and toilet and other plumbing fixtures, and light fixtures, and the lumber, and said: "Those different amounts represent the reasonable market value of that stuff in Houston on May 1st, 1930."

No objection was made to appellee's statement as to the values. The only objection noted in the record is to Stell's answer to a question as to how much appellee paid him for the property. Stell was permitted to say, "$1300.00."

Moodie testified that he sold to Stell everything he had in the house for $650, the value the jury put on the property, other than the bathtub, plumbing fixtures, lighting fixtures, and the lumber.

■ We think no reversible error is shown in Stell's answer.

In Gulf, C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S. W. 561, 32 A. L. R. 1183, the Supreme Court held that article 1985, relating to the submission of cases on special issues, requires the submission of all issues made by the pleadings, and that the failure to submit any issue shall not be deemed a ground for a reversal of the judgment unless the submission was requested in writing by the complaining party.

■ Neither party requested the submission of the value of the bathtub, plumbing fixtures, lumber, and lighting fixtures, and under the above authority no error is shown in not submitting the issue of values of said items.

This brings us to the question of error submitted and in rendering judgment for exemplary damages. Appellant insists that the verdict of the jury on exemplary damages is not supported by the evidence.

Appellee alleged a conversion by appellant of said property, and that in converting said property appellant was actuated by malice and by a bitter, resentful, and malignant feeling of ill will toward appellee, and by a desire

and intention to injure and damage appellee, and that by reason whereof appellee has sustained and is entitled to recover exemplary damages in the sum of $2,000. The court submitted the issue as follows:

"What amount of exemplary damages, if any, do you find the plaintiff is entitled to receive herein of the defendant? Answer in dollars and cents."

"In connection with the foregoing issue you are instructed that exemplary or punitive damages are awarded in the nature of punishment, not to enrich the injured party, but for the public good, and in this case you are instructed that if you believe from the evidence that the defendant, T. D. Loftus, in withholding plaintiff's property was actuated by malice, as is herein defined to you, and that such act in withholding said property of the plaintiff was willful and wanton, or done with the intent to injure plaintiff, you may assess such amount as exemplary damages as you may deem proper under all of the circumstances. By the word 'malice', as used herein, is meant an act done with bad or wicked intent and with the specific intention to injure, or an act done with such wanton and gross indifference as to indicate an utter disregard of consequences amounting to a willful act."

The jury awarded the sum of $2,000 as exemplary damages, and judgment was so entered.

The record does not show that appellant objected in any way to the court's charge, or requested the submission of any issue in connection with the issue of exemplary damages. The point made is as to the sufficiency of the evidence to justify the submission of the issue.

Appellant made no use of any process of the court to detain or withhold the removal of the property from the building. He refused to let the property be taken out of the building and employed a watchman to prevent its removal. Several witnesses testified that appellant said that if appellee came to take the property out he would "beat hell out of him," and sent appellee word to that effect.

■ The mental factor expressed in the terms used in the petition and the court's charge, such as malice, willfulness, wantonness, intent to injure, alleged to characterize appellant's act in withholding said property, must be sustained by some act or acts of appellant, other than the mere fact of withholding or preventing the removal of the property from the building. Such withholding of the property, however, may be considered in connection with any act, fact, or circumstance in determining the issue of malicious intent, or wanton disregard for the rights of appellee, as is deemed equivalent to such intent.

On one occasion Loftus said to Ray: "Well, you didn't settle with me." Ray said: "I don't owe you nothing, I offered you the money once and you wouldn't take it." Loftus said: "You lied." And again: "You told a lie. You better get out of this place." Appellant testified that Ray offered to pay the rent to him like he had been paying to the Houston Hotel Company, and that he told Ray he would not accept any rent from him at all, that he could stay until he notified him, etc. He further testified: "When I took this property I didn't care whether Mr. Ray made a fight or not. * * * I mean to say that as owner of that building I did have the right to take the tenant's furniture. I had a landlord's lien for my rent and I still have."

■ Without quoting the evidence, the facts seem to be that the Houston Hotel Company had the entire building leased, and that appellee had the second and third floors subleased from that company. When the hotel company surrendered its tenancy appellee offered to pay the rent to appellant, which was refused. When appellant had again leased the building, he then demanded of appellee to pay the back rent he had formerly refused to accept, and on appellee's refusal he forcibly took charge of the premises and the property in question and refused to let the property be removed. No question is made of appellant's right of re-entry and we need not refer to it further. However, in the exercise of appellant's right of re-entry, he has his remedy under the statute to prevent an unlawful removal of the tenant's property. He may not himself take forcible possession of the tenant's property, and by doing so usurp the powers and functions of the court, and when he does so and acts oppressively, exemplary damages may be awarded where such facts are made to appear.

■ Under the jury's findings appellee owed appellant no rent. Such being the fact, appellee had the right to remove his property from the premises, and appellant had no right by the process of the court, or otherwise, to prevent such removal. Appellant's conduct in preventing the removal of appellee's property was not justified, but was oppressive, threatening, "if he does come up here (in the rooms where appellant's property was) I am going to beat the devil out of him," and extremely abusive language to appellee, calling him a liar, under such circumstances reasonably calculated to provoke a breach of the peace. We think the jury and the trial court, under the facts shown, could find that appellant's act in withholding the property was actuated by malice, was willful and wanton.

Appellant submits that the amount of exemplary damages found and assessed is grossly excessive.

■ We are inclined to agree with appellant on this proposition. The exemplary damages are far in excess of the actual damages found. The statute does not fix or limit the amount of such damages. Our Supreme Court

in several cases, after discussing the question, has said that in the absence of a more definite rule the exemplary damages, when allowed, should bear proportion to the actual damages sustained. J. P. Willis & Bro. v. McNeill, 57 Tex. 465, 480; International & G. N. R. R. Co. v. Tel. & Tel. Co., 69 Tex. 277, 5 S. W. 517, 5 Am. St. Rep. 45; Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315; Flannery v. Wood, 32 Tex. Civ. App. 250, 73 S. W. 1072. It is said in C. J. vol. 17, p. 905, par. 294, the award of exemplary damages should not be disproportionate to the actual damages sustained. To the same effect is Texas Jurisprudence, vol. 13, p. 248.

We have concluded that the exemplary damages are excessive to the extent of $1,000.

The other items of damages remain undisturbed as in the judgment of the trial court.

Appellee is given twenty days from and after the rendition of this opinion within which to file in this court a remittitur of $1,000 of the item of exemplary damages, and the interest on said amount to this date, and if such remittitur is not filed within said time the case will be reversed and remanded.

All points in appellant's brief not specially discussed have been considered and are overruled.

The case is affirmed conditional upon the entry of a remittitur as above required.