**PANHANDLE & SANTA FE RAILWAY COMPANY, Appellant,**

v.

**W. B. HOGAN, Jr., d/b/a W. B. Hogan & Son, Appellee.**

**No. 7437.**

Court of Civil Appeals of Texas.

Amarillo.

Feb. 15, 1965.

Rehearing Denied March 22, 1965.

McWhorter, Cobb, Johnson & Cobb, Lubbock, for appellant.

Nelson, McCleskey & Harriger, Lubbock, for appellee.

CHAPMAN, Justice.

This is an appeal by Panhandle & Santa Fe Railway Company from a judgment based upon a jury verdict for W. B. Hogan, Jr. d/b/a W. B. Hogan & Son against the railway company for conversion of rock, sand, and gravel, referred to in the record as aggregate, which had been stored on Santa Fe's property adjacent to Hogan's leased and enclosed premises.

On July 22, 1955, Santa Fe leased to appellee, W. B. Hogan & Son, 12,500 square feet of land owned by them along their right of way. The lease provided, among other conditions, that it could be terminated at any time by either party by serving 30 days written notice of termination upon the other party; that any notice given by lessor to lessee should be deemed to be properly served if such notice was deposited in the post office, post paid, addressed to lessee at Lubbock, Texas; and that lessee should use the premises exclusively as a site for a warehouse.

The lease was for a nominal sum and the obvious purpose of the Santa Fe in making the lease was the business appellee convinced them would result to the railway company in rail carload business. The testimony shows an estimate by the Hogans of 50 cars per annum. In 1956 they shipped 30 cars; in 1957, 29 cars; in 1958, 3 cars; and in 1959, 1 car; and none afterwards. Santa Fe cancelled the lease on October 18, 1960.

Though at least three letters dated from February 24, 1961, to September 13, 1961, sent by certified mail with return receipt requested and mailed in due course of business were addressed to Mr. Hogan at his proper address requesting that he effect proper clearance of the site of the right of way formerly covered by their lease agreement, all were returned unclaimed except one received approximately six days after Santa Fe had hired the aggregate removed and spread over part of their right of way to fill in holes and level their property.

Appellees had their leased site fenced but the record shows the aggregate was stored or piled outside their fenced area. Some of it was piled next to the fence and just the small amount that sifted through the fence was on the actual lease. An exhibit introduced into evidence shows two piles of the aggregate on the leased premises of Lubbock Insulation Company, another lessee of Santa Fe, and one pile on Santa Fe's unleased property outside appellee's lease.

Santa Fe defended the suit for conversion on the theory that appellee was in law a trespasser but it cited no reliable authority showing any legal right of a land owner to convert the property of a trespasser under facts analogous to the instant case. Appellee contends he had permission from Mr. Deitker, a Santa Fe employee, for the storage on the Santa Fe property, and from Mr. Bristow of Lubbock Insulation for storage on their lease, and was therefore a licensee by virtue of those oral licenses.

A jury found Mr. Deitker was without authority from Santa Fe to make representations to Mr. Hogan that he could store the crushed rock, sand, and gravel on premises adjacent to the premises formerly leased by the Hogans.

The only evidence on the subject of his authority was by Mr. Deitker himself. He testified in effect that he was general freight agent for Panhandle & Santa Fe Railway Company covering an area that included Lubbock County; that his duties are principally in sales and industrial work and service matters; that he investigated the lease application of the Hogans, recommended it to his superior traffic manager, but that the traffic department does not execute any leases; that leases are executed by the general manager's office, or the vice president, or president in Chicago, depending on the type of lease; and that he has no authority to make any written or oral agreement or lease.

The trial court, over the objections of appellant, submitted issues as to whether W. B. Hogan was a licensee from Santa Fe to store the aggregate on land not described in the lease and the jury answered affirmatively.

It requires no authority to say, the question of whether one is a licensee or not is a legal question. In accordance with Rule 277, Vernon's Ann.Tex.Rules the court gave an explanatory instruction by defining a licensee as "one having a right or mere permissive use to land authorized by a land owner or one having authority, without granting any interest in the land." The record is undisputed that the land owner, Santa Fe, did not authorize any right or permissive use to store the aggregate on their unleased land. The only evidence that anyone representing Santa Fe authorized such right was the evidence of Mr. Hogan that Mr. Deitker did so, and the jury found he was not clothed with such authority. The evidence is undisputed that he had not such authority. Therefore, as to the aggregate stored on the unleased premises of Santa Fe, it is inescapable that the Hogans were trespassers.

Our Supreme Court has held that: "A trespasser * * * is one who, not having the title to land, without the consent of the true owner, makes entry thereon." Pilcher v. Kirk, 55 Tex. 208, 216; McDaniel Bros. v. Wilson, Tex.Civ.App., 70 S.W.2d 618 (writ refused).

The court instructed the jury that a person "is a trespasser where he enters upon the property of another without any right, lawful authority, or express or implied invitation, permission, or a license, not in performance of any duty to the owner."

Under either the definition of trespasser approved by the Supreme Court or the one given by the trial court, the Hogans were trespassers as to the aggregate stored on Santa Fe's unleased land.

The legal problem thus presented is whether Santa Fe had the right and authority to remove the personal property of a trespasser from the right of way sought to be cleared and convert it to their own use without remuneration.

Under Section 16 of the lease contract if lessee failed to remove the improvements and restore the premises to substantially the state in which they were prior to the construction of the improvements, within the period and after the notice provided for in the clause, Santa Fe had the right and authority to hold the improvements as its sole property. We do not believe under the record here the aggregate could be called improvements within the meaning of the lease.

As heretofore stated, appellant has cited us to no reliable authority holding that a land owner may convert personal property of a trespasser to his own use, and in a diligent search we have found no authorities so holding under facts analogous to our own.

The San Antonio Court of Civil Appeals, in a suit for conversion, has held where tenants abandoned a house and left personal property it became the duty of the owner of the house to safely care for the personal property they found there. The court said, "by taking possession of the premises they made themselves responsible for the property left there; * * *." Alsbury v. Linville, Tex.Civ.App., 214 S.W. 492, 495 (writ dismissed).

The El Paso intermediate court has said: "He [referring to the lessor] may not himself take forcible possession of the tenant's property, and by doing so usurp the powers and functions of the court, * * *." Loftus v. Ray, Tex.Civ.App., 46 S.W.2d 1034 (dismissed woj).

Santa Fe could have cleared the aggregate from the premises involved, stored it and charged appellee for the moving and storage but they elected to move it and improve their property with it. Under the contract of lease between the parties

and the record here made we do not believe they had the legal authority to do so even though as to that stored on Santa Fe's unleased premises appellees were trespassers. If they did not have such authority as to that stored on unleased premises; a fortiori, they certainly had no such authority as to the aggregate stored on Lubbock Insulation property, which W. B. Hogan, Jr. testified was with that company's consent.

Accordingly, the judgment of the trial court is affirmed.